**UNITED STATES of America, Appellant,**

v.

**Mario GIGANTE et al.,**
**Defendants-Appellees.**

No. 1116, Docket 76–1128.

United States Court of Appeals,
Second Circuit.

Argued June 7, 1976.

Decided June 22, 1976.

Barbara J. Ambler, Sp. Atty., U. S. Dept. of Justice, New York City (Robert B. Fiske,

Jr., U. S. Atty., Southern District of New York, New York City, on the brief, James A. Moss, Asst. U. S. Atty., New York City, of counsel), for appellant.

Barry I. Slotnick, New York City, for defendants-appellees Mario Gigante and Thomas Villanova.

Arnold E. Wallach, New York City (Peter Peluso, New York City, for defendant-appellee Davy Tregcagnoli, Fredrick S. Goldstein, for defendant-appellee Benjamin Raugi, Robert Blossner, New York City, for defendants-appellees Frank Formosa and Joseph Palermo, on the brief).

Irving Anolik, New York City, for defendants-appellees Joseph Sarcinella, Joseph Denti, Vito Di Salvo, Danny Cilenti, Gerald Giangregorio and Nicholas Longo.

Armende Lesser, New York City, for defendant-appellee Vincent Landolfi.

Before KAUFMAN, Chief Judge, FEINBERG and VAN GRAAFEILAND, Circuit Judges.

IRVING R. KAUFMAN, Chief Judge:

Justice Brandeis tellingly observed almost 50 years ago that "writs of assistance and general warrants are but puny instruments of tyranny and oppression when compared with wire tapping." *Olmstead v. United States*, 277 U.S. 438, 476, 48 S.Ct. 564, 571, 72 L.Ed. 944 (1928) (dissenting). Mindful of this potential danger, Congress, in enacting Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510 *et seq.*, prescribed specific and detailed procedures to ensure careful judicial scrutiny of the conduct of electronic surveillance and the integrity of its fruits. We are called upon to determine whether the Government's conceded failure to punctiliously observe one of those procedures— the requirements of 18 U.S.C. § 2518(8)(a) that wiretap evidence be presented for judicial sealing "immediately" upon the expiration of the authorizing order which produc-

ed them—requires the suppression of the evidence when judicial supervision of such sealing is delayed. In light of the statute's clear language, and the serious peril it was designed to avert, our answer must be in the affirmative.

I.

A brief narration of the facts underlying this appeal will aid in understanding the issues presented. On November 10, 1972, the Organized Crime and Racketeering Strike Force applied to then-District Judge Gurfein of the Southern District of New York for authorization to intercept conversations carried over a Bronx telephone, as part of its investigation of illegal gambling operations allegedly conducted through "gambling wirerooms". These rooms, it was alleged, were nerve centers to which those placing bets telephoned their wagers on the outcome of various equestrian and athletic contests. In addition, the wirerooms exchanged "line information" (the current odds on a sporting event), and, when an unusually large sum was wagered, reduced their risk by dividing the bet among several establishments—a practice known to the trade as "laying off".

The conversations were monitored by a team of FBI agents, under the supervision of Special Agent Richard Nalley, and recorded simultaneously on two tape recorders. At the end of each shift, the monitoring agent placed one tape, which he designated the "original", in a box. The carton was thereupon sealed with evidence tape, labelled, dated and initialed by the agent. The duplicate tapes were turned over to Agent Nalley, with a "chain of custody" form attached to the box containing the "original", indicating this transfer and any other conveyance.[1]

Of paramount concern in this appeal, however, is the Government's egregious delay in seeking judicially-supervised sealing

---

1. Even as to this straightforward procedure, there were numerous irregularities. Some tapes were not given to Nalley personally, but were dropped in his mail folder. Others were not initialed, or lacked properly executed forms. *See* transcript of Feb. 2, 1976 suppression hearing, at 65–73.

of the tapes as required by the statute. Section 2518(8)(a) of Title 18 mandates the presentation of wiretap-derived evidence to the judge who initially authorized the interceptions, "immediately upon the expiration of the order or extensions thereof."[2] The judge then directs the manner of sealing and storing the recorded communications. The first wiretap order expired on November 24, 1972, but Nalley and James Dougherty, the Special Attorney supervising the investigation, did not return any tapes to Judge Gurfein until sometime in December. Although Nalley later testified[3] that Judge Gurfein had personally sealed and initialed a box containing the recordings, no judicial order was signed, nor was any record of the proceeding preserved.

The Strike Force continued its investigation, obtaining a series of six subsequent orders authorizing electronic surveillance of nine telephones in the Bronx, Manhattan, and Queens. But, in each instance, there were grave delays in returning the tapes to the authorizing judge for directions on sealing and custody. To illustrate, we cite the orders under discussion, relevant dates, and the delays involved:

| Date of Wiretap Order | District Judge | Date Wiretap Order Expired | Date of Court-Directed Sealing | Delay |
|---|---|---|---|---|
| Nov. 30, 1972 | Motley | Dec. 14, 1972 | Jan. 8, 1974 | 12 months, 25 days |
| Dec. 8, 1972 | Gurfein | Dec. 23, 1972 | Jan. 7, 1974 | 12 months, 15 days |
| Dec. 27, 1972 | Carter | Jan. 10, 1973 | Jan. 7, 1974 | 11 months, 28 days |
| Feb. 7, 1973 | Tyler | Feb. 22, 1973 | Jan. 7, 1974 | 10 months, 16 days |
| Mar. 7, 1973 | Ward | Mar. 22, 1973 | Jan. 7, 1974 | 9 months, 16 days |
| Apr. 13, 1973 | Bartels | Apr. 27, 1973 | Jan. 8, 1974 | 8 months, 12 days |

The Government has provided no explanation whatsoever for this proscrastination.[4] When Dougherty left the Strike Force in June of 1973, the tapes remained in a locked filing cabinet without having received any judicial attention. Not until more than a year after the first of these six wiretaps had been authorized did the new supervising attorney discover that the tapes had not been presented to the appropriate district judges for sealing. Finally, on January 7 and 8, 1974, judicial orders for sealing and custody were belatedly obtained from the issuing judges for the recordings derived from the six wiretap authorizations.

On January 28, 1975, Mario Gigante and twenty-four others were indicted for conducting an illegal gambling business and conspiracy to commit that offense. 18 U.S.C. §§ 1955, 371. Prior to trial, scheduled to begin on March 1, 1976, 20 of the 25

---

**2.** Section 2518(8)(a) provides:

(8)(a) The contents of any wire or oral communication intercepted by any means authorized by this chapter shall, if possible, be recorded on tape or wire or other comparable device. The recording of the contents of any wire or oral communication under this subsection shall be done in such way as will protect the recording from editing or other alterations. Immediately upon the expiration of the period of the order, or extensions thereof, such recordings shall be made available to the judge issuing such order and sealed under his directions. Custody of the recordings shall be wherever the judge orders. They shall not be destroyed except upon an order of the issuing or denying judge and in any event shall be kept for ten years. Duplicate recordings may be made for use or disclosure pursuant to the provisions of subsections (1) and (2) of section 2517 of this chapter for investigations. The presence of the seal provided for by this subsection, or a satisfactory explanation for the absence thereof, shall be a prerequisite for the use or disclosure of the contents of any wire or oral communication or evidence derived therefrom under subsection (3) of section 2517.

**3.** Evidentiary hearing before Judge Griesa, Feb. 2, 1976.

**4.** Indeed, the Government has conceded this fact. *See* Government's Brief, p. 7.

defendants moved to suppress the wiretap evidence. On February 2, 1976, after a one-day evidentiary hearing at which Agent Nalley testified, Judge Griesa granted their motion, holding that the long delay in obtaining judicial sealing of recordings made pursuant to the last six wiretap authorizations mandated their suppression under § 2518(8)(a). He also held that tapes derived from the first order should be disallowed in view of the absence of a formal judicial order or record of proceedings regarding the judicial sealing, and because of the indefinite date of judicial sealing. The Government immediately appealed from Judge Griesa's order, pursuant to 18 U.S.C. § 2518(10)(b).

## II.

We recently had occasion to observe that Congress, in enacting Title III's sharply detailed restrictions on electronic surveillance, intended to "ensure careful judicial scrutiny throughout" the process of intercepting and utilization of such evidence. *United States v. Marion*, 535 F.2d 697, 698, No. 75–1408 (2d Cir. May 7, 1976).

The immediate sealing and storage of recordings of intercepted conversations, under the supervision of a judge, is an integral part of this statutory scheme. Section 2518(8)(a) was intended "to insure that accurate records will be kept of intercepted communications". S.Rep. 1097, 90th Cong., 2d Sess., *quoted in* 2 U.S.Code Cong. & Ad.News, 2112, 2193 (1968). Clearly all of the carefully planned strictures on the conduct of electronic surveillance, *e. g.,* the "minimization" requirement of § 2518(5), would be unavailing if no reliable records existed of the conversations which were, in fact, overheard. Maintenance of the integrity of such evidence is part and parcel of the Congressional plan to "limit the use of intercept procedures to those situations clearly calling for the employment of this

extraordinary investigative device." *United States v. Giordano*, 416 U.S. 505, 527, 94 S.Ct. 1820, 1832, 40 L.Ed.2d 341 (1974). Moreover, it plays a "central role in the statutory scheme". *Id.* at 528, 94 S.Ct. at 1832. *See also, United States v. Chavez*, 416 U.S. 562, 94 S.Ct. 1849, 40 L.Ed.2d 380 (1974).

The Government has conceded that the requirements of § 2518(8)(a) have not been met. Nor is it disputed that failure to comply with that subsection is a ground for suppression of recorded evidence.[5] Rather, the Government argues that this is not a case where the "Draconian" sanction of suppression is warranted, since the appellees have been unable to present any evidence of actual tampering with the tapes.

To demand such an extraordinary showing, however, would vitiate the Congressional purpose in requiring judicial supervision of the sealing process. Tape recorded evidence is uniquely susceptible to manipulation and alteration. Portions of a conversation may be deleted, substituted, or rearranged. Yet, if the editing is skillful, such modifications can rarely, if ever, be detected. The judicial sealing requirement, therefore, provides an external safeguard against tampering with or manipulation of recorded evidence. The sealed tapes become "confidential court records"[6] and cannot be unsealed in the absence of a subsequent order. When these safeguards are compared with the haphazard procedures employed in this case,[7] the wisdom of Congress becomes manifest.

Moreover, the plain language of the statute requires that this evidence be suppressed. Section 2518(8)(a) states, *inter alia,* that:

> The presence of the seal provided for by this subsection, or a satisfactory explanation for the absence thereof, *shall be a prerequisite* for the use or disclosure of

---

5. In light of our holding today that § 2518(8)(a) offers an independent basis for excluding the evidence from trial, we need not consider whether the tapes are also rendered inadmissible by § 2518(10)(a), the general provision of the Act.

6. S.Rep. 1097, 90th Cong., 2nd Sess., *quoted at* 2 U.S.Code Cong. & Ad.News p. 2193 (1968).

7. *See* note 1, *supra.*

the contents of any wire or oral communication or evidence derived therefrom . . . . (emphasis supplied)

■ The Government contends that this subsection merely states that wiretap evidence is inadmissible if *no* seal is present at trial, but is inoperative if judicial sealing has ultimately been obtained, even if it comes after a year's delay. But this interpretation completely elides the statutory requirement of a "seal *provided for by this subsection*." Section 2518(8)(a) provides for *continuous* judicial scrutiny of the entire process of obtaining and utilizing recorded conversations, and consequently requires their presentation to a judge "immediately" —as the statute insists—upon the expiration of the authorizing order. Under the Government's interpretation, however, recorded evidence could be kept in the prosecutor's office, unsealed, for a prolonged and indefinite period of time, so long as a judicial sealing order is eventually obtained sometime before trial.

■ The Government also argues that since a "satisfactory explanation" for the absence of a judicial seal is, under Title III, a sufficient prerequisite to the use of the evidence, recordings should be admissible in the absence of any evidence of actual alteration. This argument is ill-conceived. It is illogical to infer from the existence of one statutory alternative to sealing that a second, unwritten, alternative is also available. On the contrary, two possible prerequisites to the use of wiretap evidence—the presence of a judicial seal, or a satisfactory explanation of its absence—are explicitly stated. Failure to meet either requirement must result in the inadmissibility of the tapes.

■ Nor can we accept the Government's assertion that the belated signing of a sealing order by the District Judge must end all further inquiry into the adequacy of the sealing and custody of the fruits of electronic surveillance. The sealing orders were all signed, without a hearing, within two days after the belated presentation of the tapes to the supervising judges. There is no indication of any judicial inquiry at that time into possible alteration of the tapes, nor, indeed, is such investigation provided for in Title III. Rather, the sealing is merely designed to ensure that absolutely no *subsequent* alteration of the recordings can occur. Only at the evidentiary hearing before Judge Griesa—after the tapes in question were suppressed—could the question of compliance with § 2518(8)(a) have been determined.

The question raised by this appeal appears to be one of first impression in our Circuit.[8] In *United States v. Falcone*, 505 F.2d 478 (3d Cir. 1974), *cert. denied* 420 U.S. 955, 95 S.Ct. 1339, 43 L.Ed.2d 432 (1975), a divided panel of the Third Circuit held that a 45-day delay in presenting recorded wiretap evidence to the judge who issued the order authorizing telephonic surveillance was not, by itself, sufficient reason to suppress such evidence. Judge Hannum, for the *Falcone* majority, focused primarily upon the suppression provisions of § 2518(10)(a), and paid scant attention to the independent prerequisites for admissibility delineated in § 2518(8)(a).

---

8. We did hold, in *United States v. Poeta*, 455 F.2d 117 (2d Cir.) *cert. denied* 406 U.S. 948, 92 S.Ct. 2041, 32 L.Ed.2d 337 (1972), that suppression was not required by the New York statutory analogue to § 2518(8)(a) where a 13-day delay in obtaining judicial sealing had been satisfactorily explained. In the instant case, however, the Government concedes that no satisfactory explanation exists for noncompliance with the statute.

Similarly, in *United States v. Sklaroff*, 506 F.2d 837 (5th Cir.) *cert. denied* 423 U.S. 874, 96 S.Ct. 142, 46 L.Ed.2d 105 (1975), the Fifth Circuit held that a delay of 14 days in obtaining judicial directions as to sealing and custody had been ·"accounted for", and the requirements of § 2518(8)(a) thus satisfied. Not only are the delays much more egregious in the instant case, but the Government is totally unable to account for them.

Although the Government also cites *United States v. Lawson*, 521 F.2d 1403 (unpublished order) (7th Cir. 1975), we note that such unpublished orders have no precedential value in the Seventh Circuit. 7th Cir. Local Rule 28. In light of our similar restriction on the citation of unpublished orders, 2d Cir. Local Rule § 0.23, we cannot attach any precedential value to the *Lawson* order.

We find ourselves in agreement with the learned dissent of Judge Rosenn, who observed that under § 2518(8)(a) a satisfactory explanation is required, not only for total failure to seal the tapes, but for failure to seal the tapes "immediately" as well. He concluded that any other interpretation "would completely undercut the statutory purpose of protecting the integrity of the tapes." *United States v. Falcone, supra,* 505 F.2d at 486 n.5.

In short, the Government's failure to comply with the statutory sealing procedures for recorded wiretap evidence—procedures explicitly made a prerequisite to their admissibility—must result in the exclusion of the recordings from trial.

Due to the extensive delays in presenting the recordings derived from the last six wiretap orders to the issuing judges, and the absence of any satisfactory explanation for those lapses, we affirm Judge Griesa's order suppressing that evidence.[9]

### III.

As to recordings derived from the first surveillance order, however, the facts surrounding their subsequent treatment by Judge Gurfein remain unclear. While we agree that it might be better practice for the issuing judge to sign a formal order directing the sealing and custody of the tapes, and to maintain a record of that proceeding, such procedures are not required by § 2518(8)(a). Rather, the subsection states merely that the judge shall provide directions as to sealing and custody. Because Judge Gurfein apparently gave such instructions as to the products of the first wiretap, we cannot conclude that their suppression was mandated.

There remains, however, the question of precisely when those tapes were presented for sealing. Judge Griesa, after the presentation of testimony at the suppression hearing, found that the date could only be fixed as "some time in December 1972." Since the first wiretap authorization expired on November 24, 1972, there was a delay of between 6 and 37 days in sealing the tapes derived from that order. But, the Government now contends that the third wiretap order, signed by Judge Gurfein on December 8, 1972, constituted an extension of the first order, and hence, extended the time in which to present the tapes for sealing.[10] Since this argument was not made to the trial judge, we must remand for the determination of the following questions: (1) whether the December 8, 1972 order was an extension of the November 10, 1972 authorization for the purpose of the sealing requirement of § 2518(8)(a), and (2) if it was such an extension, whether

---

**9.** Our decision today does not disturb previous holdings of this court in *United States v. Manfredi,* 488 F.2d 588 (2d Cir. 1973), *cert. denied* 417 U.S. 936, 94 S.Ct. 2651, 41 L.Ed.2d 240 (1974), *United States v. Rizzo,* 492 F.2d 443 (2d Cir.) *cert. denied* 417 U.S. 944, 94 S.Ct. 3069, 41 L.Ed.2d 665 (1974), or *United States v. Principie,* 531 F.2d 1132 (2d Cir. 1976). These cases dealt with those provisions of § 2518(8)(d) which require that notice of telephonic interception be sent to persons named in the order authorizing the wiretap, "within a reasonable time but not later than ninety days" from the date of the application for surveillance. In all three cases, we held that delays longer than 90 days were reasonable where no prejudice was shown, and did not require suppression.

Unlike § 2518(8)(a), the notice requirements of subsection (8)(d) contain no independent sanction for noncompliance, and the determination whether suppression is warranted, therefore, must be made by reference to § 2518(10)(a). This section, in turn, as interpreted by the Supreme Court in *Giordano* and *Chavez,* mandates suppression only for violations of provisions which play a "central role in the statutory scheme." Our recent decisions in *Principie, Rizzo,* and *Manfredi* held that the provisions of § 2518(8)(d) do not play such a role. Moreover, whatever problems a defendant may have in demonstrating prejudice due to a lack of the 90-day notice, they are of a far different kind than establishing that tapes within the government's possession have been tampered with. In all events, this issue will probably be decided by the Supreme Court during the next Term. *United States v. Donovan,* 513 F.2d 337 (6th Cir. 1975) *cert. granted* 424 U.S. 907, 96 S.Ct. 1100, 47 L.Ed.2d 310, 44 U.S. L.W. 3462 (1976).

**10.** It will be remembered that § 2518(8)(a) requires presentation to the judge immediately upon the expiration of the authorizing order *"or extensions thereof."*

the explanation for the delay of thirteen days in obtaining that extension [11]—from November 24 to December 8—is sufficient to excuse the delay in sealing.

Accordingly, we remand as to the evidence derived from the wiretap order of November 10, 1972, and affirm the balance of Judge Griesa's order suppressing the fruits of the other six surveillance authorizations.

---

11. If the Government seeks an extension of the wiretap order as a ground for deferring the requirement of judicial sealing, it is incumbent upon it to do so "immediately" or provide an explanation of its failure to do so. A contrary interpretation would fly in the face of the clear intent of § 2518(8)(a), by permitting the Government, whenever it fails to obtain immediate sealing orders, to avoid suppression by simply obtaining an extension of the initial wiretap authorization.