UNITED STATES of America,

v.

Giuseppe VENUTI, a/k/a "Pagnotta," Calogero Mannino, a/k/a "Charlie," Antonio Badalamenti, Federico Spatola, Andrea Gambino, Ferdinando Capasso, Antonio Trinajstic, a/k/a "Tony," and Carlos Trinajstic, a/k/a "Johnny," Defendants.

No. S 84 CR 1002 (PKL).

United States District Court,
S.D. New York.

Jan. 9, 1986.

Rudolph W. Giuliani, U.S. Atty. for the Southern Dist. Atty. of N.Y. (William M. Tendy, Deputy U.S. Atty., David Denton, Executive Asst. U.S. Atty., and Kerri Martin, Asst. U.S. Atty., of counsel), New York City, for U.S. of America.

Brownstein & Brownstein (Irwin Brownstein, and David K. Brownstein, of counsel), New York City, for Calogero Mannino.

Gerald L. Shargel (Christine E. Yaris, of counsel), New York City, for Antonio Badalamenti.

Freeman, Nooter & Ginzberg (Louis M. Freeman, of counsel), New York City, for Ferdinando Capasso.

Cohn & Blau (Frederick H. Cohn, of counsel), New York City, for Carlos Trinajstic.

Stanley S. Arkin (Marc Bogatin, of counsel), New York City, for Antonio Trinajstic.

Richard Maracina, New York City, for Giuseppe Venuti.

Caesar D. Cirigliano (John P. Curley, of counsel), New York City, for Andrea Gambino.

## OPINION

LEISURE, District Judge:

Defendants have moved to suppress the fruits of oral and electronic surveillance. For the reasons contained herein, that motion is denied.

### I. BACKGROUND

The superseding indictment in this case, filed on July 9, 1985, named eight defendants. The first count of the indictment alleged that all eight defendants engaged in a conspiracy to distribute and possess with intent to distribute a Schedule I narcotic drug controlled substance, namely, heroin, in violation of federal law. The remaining twenty-eight counts of the indictment charged certain of the named defendants with having committed various substantive narcotics offenses.

Prior to trial, defendants moved to suppress a large number of tapes on which the voices of some of the defendants may be heard. The tapes are the fruits of oral and electronic surveillance conducted pursuant to two orders issued by Hon. Irving Ben Cooper, District Judge of this Court, on October 1, 1984 and November 8, 1984. The first order authorized thirty days' surveillance of defendant Venuti's home and telephone (the "Venuti tap"), and was extended for an additional thirty day period by order of Judge Cooper on October 31, 1984. The latter order authorized electronic surveillance of conversations that took place on a telephone located in "Mr. Cic-

cio's" barbershop, where defendant Mannino was employed (the "Ciccio tap").[1]

Originally, defendants advanced four theories in support of their motions to suppress. First, they argued that the tapes should be suppressed because of the government's failure to ensure immediate sealing of the tapes at the termination of surveillance, as required by the procedures set forth in 18 U.S.C. § 2518(8)(a). Next, they argued that the tapes should be suppressed because the law enforcement personnel conducting the surveillance did not properly minimize their interceptions in accordance with the dictates of 18 U.S.C. § 2518(5). Third, they argued that the applications for the interception orders were not properly authorized by the Attorney General. Finally, they argued that the unintelligibility of some of the tapes necessitated an audibility hearing in order to determine which tapes would be rendered inadmissible.

On August 27, 1985, I issued my initial ruling on defendants' motions to suppress. *See United States v. Venuti*, S 84 Cr. 1002 (PKL) (August 27, 1985 Memorandum and Order). In that Order, I denied defendants' motion to suppress on minimization grounds; ruled that the motion to suppress on grounds of improper authorization had been withdrawn at defendants' own request; and denied defendants' request for a pre-trial audibility hearing. *See id.* at 12–18.

▊ As to defendants' motion to suppress because of the government's failure to ensure immediate sealing of the surveillance tapes, my ruling was, of necessity, more complex and less definite than its three companion rulings. First, I ruled that, as a matter of law, 18 U.S.C. § 2518(8)(a) requires immediate sealing at the expiration of the period for which surveillance was authorized rather than upon the cessation of actual surveillance.[2] Ac-

---

1. The fruits of the Venuti tap and the Ciccio tap will be referred to throughout this opinion as the Venuti tapes and the Ciccio tapes, respectively.

2. As I noted in the August 27 Memorandum and Order at 5, the Second Circuit has reserved ruling on this specific aspect of the statutory sealing requirements. *See United States v. Vazquez*, 605 F.2d 1269, 1278 n. 21 (2d Cir.),

cordingly, I calculated that the Government had only delayed one week (7 days) in sealing the Venuti tapes. *See* August 27 Memorandum and Order at 5–7. (There is no dispute in this case that the delay in sealing the Ciccio tapes was 13 days.) Second, I considered whether the government had offered a "satisfactory explanation" for the sealing delays. This question was, and remains, of great significance in this case since, under the law of the Second Circuit, the government's failure to provide a "satisfactory explanation" for the failure to seal tapes "immediately" must result in the suppression of those tapes at trial. *See United States v. Gigante,* 538 F.2d 502, 507 (2d Cir.1976). At the time of my August 27 Order, the government's explanation for the sealing delays was the "heavy workload" of Daniel Perlmutter ("Perlmutter"), the Assistant United States Attorney who had been in charge of the "Venuti" investigation for the United States Attorney's Office for the Southern District of New York. *See* August 27 Order and Memorandum at 7–8. Upon my initial consideration of that explanation, I concluded that defendants were entitled to a pretrial evidentiary hearing that would examine the government's proferred justification "in some detail." *Id.* at 12.

The pre-trial evidentiary hearing that followed took place during all or part of five trial days. In the course of the hearing, a significant amount of evidence and testimony was introduced, much of it concerning Assistant United States Attorney Perlmut-

ter's mental and physical condition from December 1 until December 21, 1984, the time period which this Court deemed to be of greatest relevance to the suppression hearing. This evidence and testimony clearly established that during the period in which Perlmutter's statutory obligation to seal the Venuti and Ciccio tapes arose, he was overworked, emotionally distressed, physically ill, and regularly ingesting cocaine.[3]

On September 23, 1985, at the conclusion of the pre-trial evidentiary hearing, I denied defendants' motion to suppress in a ruling from the bench. The factual and legal bases for that ruling are set forth in detail below.

## II. DISCUSSION

Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2520, prescribes specific procedures for securing judicial authorization for the interception of wire or oral communications in criminal investigations. *See United States v. Giordano,* 416 U.S. 505, 507, 94 S.Ct. 1820, 1823, 40 L.Ed.2d 341 (1974). Congress enacted Title III in order "to ensure careful judicial scrutiny of the conduct of electronic surveillance and the integrity of its fruits." *United States v. Gigante,* 538 F.2d 502, 503 (2d Cir.1976).

Title III specifically requires that wiretap evidence be presented for judicial sealing "immediately" upon the expiration of the order (or the extension thereof) authorizing the surveillance. *See* 18 U.S.C.

---

*cert. denied,* 444 U.S. 981, 100 S.Ct. 484, 62 L.Ed.2d 408 (1980).

**3.** In reaching a decision with regard to defendants' motion to suppress, I have considered evidence of Perlmutter's use of cocaine during the fall of 1984. It is a matter of public record that in May of 1985, Perlmutter was arrested on charges relating to the theft of narcotics and money from the United States Attorney's Office in the Southern District of New York (Subsequently, he pleaded guilty to 3 counts of theft under 18 U.S.C. § 641, and 2 counts of possession of controlled substances under 21 U.S.C. § 844). Nonetheless, as I indicated on numerous occasions during the course of the suppression hearing in this case, what Perlmutter did or did not do during the first five months of 1985

is not relevant to this Court's specific inquiry—the existence *vel non* of a satisfactory explanation for the delays in sealing the Venuti and Ciccio tapes. In contrast, what Perlmutter did or did not do during the first three weeks of December (the period in which his obligation to seal the tapes arose) is quite relevant to the merits of defendants' motion to suppress. Accordingly, evidence pertaining to his activities during December, 1984 was generally admitted in the course of the suppression hearing, while evidence pertaining to his activities during 1985 was generally excluded as irrelevant. *See* Fed. R.Evid. 402 (relevant evidence generally admissible; irrelevant evidence generally inadmissible).

§ 2518(8)(a). The Second Circuit has held that, in the absence of a satisfactory explanation, the government's failure to comply with the immediate sealing requirements of § 2518(8)(a) with regard to any recorded wiretap evidence must result in the exclusion of the recordings at trial. *United States v. Gigante*, 538 F.2d at 507.[4]

██ In the instant case, defendants' motion to suppress relates to a 7-day delay in sealing the Venuti tapes, and a 13-day delay in sealing the Ciccio tapes. In neither instance can it be said that there was an "immediate" sealing within the meaning of § 2518(8)(a). *See United States v. Vazquez*, 605 F.2d 1269, 1278 (2d Cir.1979), *cert. denied*, 444 U.S. 981, 100 S.Ct. 484, 62 L.Ed.2d 408 (1980). Accordingly, the government must provide this Court with a "satisfactory explanation" for the sealing delays, or the Venuti and Ciccio tapes will have to be suppressed. *See United States v. Gigante*, 538 F.2d at 507.

Originally, in these proceedings, the government claimed that the sealing delays had been caused primarily by Perlmutter's "heavy workload." As the pre-trial evidentiary hearing progressed, however, the government broadened the scope of its initial explanation. The government now contends that the sealing delays occurred because Perlmutter was in such a distressed mental and physical condition that he had lost his "capacity to focus" on his statutory obligation to seal the Venuti and Ciccio

tapes. The question squarely before me on defendants' motion to suppress is whether that refined explanation constitutes a "satisfactory explanation" within the meaning of 18 U.S.C. § 2518(8)(a).

**A.** *The Nature of the Sealing Delays*

Before proceeding any further, I wish to review certain facts and circumstances pertaining to the sealing delays at issue in this case.

**1.** *The Venuti Tap*

██ The Venuti tap was initiated on October 1, 1984, pursuant to an authorization order signed by Judge Cooper. As the Venuti tap continued, a set of original and "original duplicate" tapes were produced on a daily basis. At the end of each day's surveillance, the original tapes were heat-sealed in envelopes; the following day those tapes were transferred to the office of the Drug Enforcement Administration ("DEA"), where they were placed in the DEA's evidence vault. *See* Evidentiary Hearing Transcript ("Tr.") at 204.[5] On October 31, 1984, the day after Judge Cooper's initial order authorizing the Venuti tap expired, all the tapes that had been produced to that date were signed out of the DEA evidence vault by DEA Special Agent William J. Snipes ("Snipes").[6] *See* Tr. at 205. The tapes Snipes signed out were subsequently sealed by Judge Cooper on November 2, 1984.[7]

---

**4.** The *Gigante* Court relied on the statute's directive that "[t]he presence of the seal ..., or a satisfactory explanation for the absence thereof, shall be a prerequisite for the use or disclosure of the contents of any wire or oral communication." 18 U.S.C. 2518(8)(a). As the Second Circuit has acknowledged, other federal courts of appeal have construed the language of § 2518(8)(a) to require suppression of improperly sealed tapes only upon an affirmative showing of tampering. *See United States v. Vazquez*, 605 F.2d 1269, 1275 (2d Cir.1979), *cert. denied*, 444 U.S. 981, 100 S.Ct. 484, 62 L.Ed.2d 408 (1980) (citations omitted).

**5.** A virtually identical procedure was followed with regard to the Ciccio tapes. *See* Tr. at 212.

**6.** Snipes was the "case agent" in charge of coordinating the DEA's involvement in the Venuti

investigation with the United States Attorney's Office in the Southern District of New York. Snipes, who worked closely with Perlmutter, testified at considerable length during the pretrial evidentiary hearing in this case and submitted an affidavit to the Court.

**7.** Since the order authorizing the Venuti tap was extended until November 30, it was not strictly necessary for the government to have the October Venuti tapes sealed as early as November 2. The sealing requirement of 18 U.S.C. § 2518(8)(a) is triggered only when an authorizing order, including all extensions, has expired. *See United States v. Vazquez*, 605 F.2d at 1276 & n. 15; *United States v. Fury*, 554 F.2d 522, 533 (2d Cir.), *cert. denied*, 433 U.S. 910, 97 S.Ct. 2978, 53 L.Ed.2d 1095 (1977).

On October 31, 1984, Judge Cooper signed an order authorizing an extension of the Venuti tap until November 30, 1984. The actual monitoring on the Venuti tap, however, was suspended on November 16, 1984 by joint decision of Snipes and Perlmutter. *See* Tr. at 206. After the monitoring had ceased, Snipes asked Perlmutter if it was necessary to bring the tapes to Perlmutter's office for sealing. Perlmutter told Snipes that would not be necessary, since the Venuti tapes did not have to be sealed in accordance with Title III until after Judge Cooper's extension order expired. *See* Tr. at 207.

Although the extension order expired on Friday, November 30, Snipes waited until Monday, December 3, 1984, to remove the rest of the Venuti tapes from the DEA evidence vault and bring them to Perlmutter's office. *See* Tr. at 207. Although Snipes testified that he was generally familiar with the proper procedures for monitoring and safeguarding tapes of oral and electronic surveillance, *see* Tr. at 203–04, he wrongly assumed that weekend time was excluded from Title III's immediate sealing mandate, *see* Tr. at 229. In any event, when Snipes delivered the tapes on December 3rd, he asked Perlmutter about the need to seal the tapes in compliance with Title III, *see* Tr. at 232. In response, Perlmutter said that he and Snipes should be more concerned with completing the affidavits and search warrants that had to be prepared prior to the arrest of the defendants in this case. *See* Tr. at 233. Perlmutter also told Snipes that he had checked with Judge Cooper's chambers and had been told that the Judge was out of town and thus unavailable to seal the tapes. *See* Tr. at 209, 233. At the pre-trial evidentiary hearing, Snipes testified that he has since learned that Judge Cooper was not out of town that week, but was in fact conducting a civil trial in his courtroom in the Southern District of New York. *See* Tr. at 209.[8] On Friday, December 7, 1984, Judge Cooper did seal the Venuti tapes in the presence of Perlmutter and Snipes.

### 2. *The Ciccio Tap*

The Ciccio Tap was authorized by order of Judge Cooper signed November 8, 1984. The order expired on Saturday, December 8, 1984. Once again, Snipes did not retrieve the tapes from the DEA vault during the weekend, but waited until Monday, December 10th to bring the Ciccio tapes to Perlmutter's office. *See* Tr. at 212.

On December 10th or 11th, Snipes asked Perlmutter when he would seal the Ciccio tapes. Perlmutter told Snipes that he would take care of it, but that he had other responsibilities that he thought were more important. *See* Tr. at 213. Later that week, responding to a direct inquiry, Perlmutter told Snipes he would take care of the tapes. *See* Tr. at 213–14. From December 10th until either December 18th or 19th, Snipes periodically checked to see whether the Ciccio tapes (which were lying in a corner of Perlmutter's office, *see* Tr. at 232) had been sealed. *See* Tr. at 214. On December 18th or 19th, Snipes learned that the Venuti investigation had been transferred to Assistant United States Attorney Jess Fardella ("Fardella"), and that Perlmutter was no longer responsible for the case. *See* Tr. at 214. Snipes then told Fardella that the tapes had not been sealed. On Friday, December 21st, the Ciccio tapes were sealed by Hon. Whitman Knapp, District Judge of this Court.

### 3. *Supervision of Daniel Perlmutter in the United States Attorney's Office*

As an Assistant United States Attorney in the Southern District of New York, Perlmutter was assigned to both the Organized Crime Drug Enforcement Task Force and

---

**8.** To the extent that any factual ambiguity remains with respect to Judge Cooper's availability during the week of December 3, 1984, there is no need for this Court to resolve it. Even if Judge Cooper had in fact been unavailable, the government's sealing obligation would not have been postponed. It is now well-settled in this Circuit that tapes may be sealed by a judge other than the "issuing judge" when the latter is absent or unavailable. *See United States v. Vazquez,* 605 F.2d at 1280 n. 25.

to the Narcotics Unit. His participation in the Venuti investigation arose out of his involvement in the Narcotics Unit, of which he had been a member since the late summer or early fall of 1983. *See* Tr. at 20. His direct supervisor during the Venuti investigation was Rhea Kemble Brecher ("Brecher"), Chief of the Narcotics Unit.

Part of Brecher's responsibilities as the head of the Narcotics Unit was to review certain substantive work prepared by the attorneys under her supervision, such as factual affidavits that are submitted in order to get court authorization for wiretaps. *See* Tr. at 22. In the fall of 1984, it was not Brecher's policy to review an Assistant United States Attorney's compliance with Title III sealing requirements, which she regarded as a purely ministerial task that did not require supervision. *See* Tr. at 24. Recently, Brecher has made it her practice to ask Assistant United States Attorneys in her unit who are involved in oral or electronic surveillance whether they have satisfied the statutory sealing requirement, *see* Tr. at 38–39. But the Narcotics Unit has never had a "tickler" system, *i.e.*, a system whereby each attorney receives written notification of their daily responsibilities, *see* Tr. at 39.

At least until the end of 1984, Brecher considered Perlmutter an excellent Assistant United States Attorney. *See* Tr. at 21. Brecher was generally aware, in November and December of 1984, that Perlmutter was having marital difficulties and felt overworked, *see* Tr. at 25, but she did not believe that these problems were affecting the quality of his work, *see* Tr. at 27–28. At no time in 1984 did Brecher even remotely suspect that Perlmutter was using cocaine. *See* Tr. at 28.

Brecher discussed Perlmutter's problems with his workload and his marriage with Bart M. Schwartz, the then Chief of the Criminal Division. With Schwartz's assent, Brecher decided to offer Perlmutter the opportunity to take a week's vacation between Christmas and New Year's. *See* Tr. at 77. The decision to transfer responsibility for the Venuti investigation from Perlmutter to Fardella, however, was not related to Brecher's concerns about Perlmutter's personal problems. Rather, the reassignment was based on Brecher's prior determination that she would eventually relieve Perlmutter of his duties in the Venuti investigation in the event that another case of which Perlmutter was in charge actually went to trial. *See* Tr. at 62; *see also* Tr. at 220–21.

### B. *The Government's Explanation for the Sealing Delays*

#### 1. *Prosecutor's Workload*

██ The government's original explanation for the sealing delays, that the prosecutor in charge was simply too overworked, is not without support in the record. During the evidentiary hearing, Brecher testified that Perlmutter had one of the heaviest workloads among the Assistant United States Attorneys in the Southern District's Narcotics Unit, *see* Tr. at 20, testimony which should be considered in light of the fact that the Narcotics Unit as a whole is overworked, *see* Tr. at 19.[9] In the fall of 1984, Perlmutter had primary responsibility on at least two major narcotics investigations, as well as responsibility for numerous matters of lesser stature. *See* Tr. at 30–31. Perlmutter's colleagues noticed that Perlmutter was working hard on a large number of cases. *See, e.g.,* Tr. at 458–59. Brecher herself testified that in the months preceding late December, 1984, Perlmutter frequently worked six and seven days a week and often late at night. *See* Tr. at 20.

Although such evidence is obviously relevant to my general inquiry in this case, I do not find it dispositive on the issue of "satisfactory explanation." The difficulty in accepting Perlmutter's heavy workload as

---

**9.** According to Narcotics Unit Chief Brecher, "Most of the unit members work generally every evening till 7:30 or later. Many of the unit members work one or more days on the weekend, and during heavy times, that is to say, trial preparation, on trial, during a wiretap, something like that, it can be late every night and both days of the weekend." Tr. at 19.

justification in and of itself for the delays in sealing the Venuti and Ciccio tapes is that the government has not presented this Court with a complete itinerary of Perlmutter's activities during the critical period of November 30 to December 19, 1984. Although Special Agent Snipes testified that Perlmutter was busily engaged in several tasks following the arrests in the *Venuti* investigation, *see* Tr. at 217–20, no witness other than Snipes was able to testify in significant detail with regard to Perlmutter's work schedule in December, 1984.

This lack of precise proof compares unfavorably with the more complete evidence relied on by the Second Circuit in *United States v. Vazquez*, 605 F.2d 1269 (2d Cir. 1979), *cert. denied*, 444 U.S. 981, 100 S.Ct. 484, 62 L.Ed.2d 408 (1980), a case in which the government convinced the Court that sealing delays ranging from 7 to 13 days were acceptable where the constant demands of an ongoing criminal investigation had taken up all the available time of government personnel. *See* 605 F.2d at 1279. In contrast, the record in this matter contains various indications that Perlmutter was not always devoting his full energies to the *Venuti* investigation at the time when his obligation to seal the tapes arose. Moreover, testimony that Perlmutter, on at least one occasion, told Snipes that he had more important things to be concerned about than sealing tapes, *see* Tr. at 213, is not helpful to the government's position herein. *See United States v. Massino*, 605 F.Supp. 1565, 1578 (S.D.N.Y.1985) ("[m]ere disregard of the [sealing requirement] while pursuing other investigative efforts is not sufficient"); *United States v. Ramirez*, 602 F.Supp. 783, 792 (S.D.N.Y.1985) (in determining whether there exists a satisfactory explanation for a sealing delay, the Court must "ascertain that the delay was not caused by the Government's plain and simple failure to regard sealing the tapes as a priority").

In raising the foregoing considerations, I do not intend to discredit entirely the explanation of overwork. Perlmutter's heavy workload undoubtedly contributed to the sealing delays in this case. I do find, however, that Perlmutter's workload, by itself, cannot be said to provide adequate justification for the sealing delays here at issue.

2. *Prosecutor's Emotional Stress, Physical Illness and Substance Abuse*

It is now clear, however, that there is more to this matter than an overworked prosecutor. In the fall of 1984, Perlmutter was besieged by personal difficulties. His marriage was steadily deteriorating, a problem that he discussed with his friends at work *see, e.g.*, Tr. at 223, and that he believed to have been largely caused by his excessive workload at the United States Attorney's Office. His supervisor Brecher testified that in late November or early December of 1984, Perlmutter walked into Brecher's office and told her, "I just want you to know that if my marriage ends, you should feel guilty about it, because you will be responsible." Tr. at 25.

There was also considerable testimony at the pre-trial evidentiary hearing that Perlmutter was physically ill during the first three weeks of December, the time during which his duty to seal the Venuti and Ciccio tapes arose. Snipes testified that during that period Perlmutter appeared to be suffering from a chest cold, and that he had once told Snipes that he had gone to a doctor to be treated for inflamed lungs. Tr. at 222. Assistant United States Attorney Robert B. Bucknam testified that, for at least two weeks in December, 1984, Perlmutter had a "severe" cold and was exhibiting "flu-like" symptoms. Tr. at 459. Assistant United States Attorney Edward J. Little, now Deputy Chief of the Narcotics Unit, testified that during the period in question Perlmutter had lost five to ten pounds, Tr. at 445, and that Little thought Perlmutter might have had "walking pneumonia," Tr. at 443. It is a matter of record that on December 14, 1984, the day that defendants in this case were arraigned, Perlmutter appeared tired and ill, and was accompanied to court by Little. *See* Tr. at 48. Case Agent Snipes testified that on that same day Perlmutter looked tired, and

told Snipes that his chest was bothering him. Tr. at 242.

This Court has previously held that, under the circumstances of an individual case, a prosecutor's illness may provide part of a satisfactory explanation for a sealing delay. *See United States v. Aloi*, 449 F.Supp. 698, 727 (S.D.N.Y.1977); *United States v. Caruso*, 415 F.Supp. 847, 850 (S.D.N.Y.1976), *aff'd mem.*, 553 F.2d 94 (2d Cir.1977). Defendants have sought to distinguish such authority on the grounds that the prosecutor's illness in this case was self-induced. Defendants argue that Perlmutter's physical incapacity during December, 1984 was inextricably related to his use of cocaine during the same period. By his own admissions, Perlmutter was using one-half gram of cocaine on a daily basis during December, 1984. *See* Hearing Exhibits 3504B at 2; 3504H at 2.[10] I do not disagree that, with the advantage of hindsight, such an inference is supported by the record. But the inference that Perlmutter was sick because he was using drugs does not change the fact that he was sick, and therefore perhaps ill-equipped to deal with his statutory obligation to seal the Venuti and Ciccio tapes.

Moreover, Perlmutter's drug use itself suggests an independent explanation for the sealing delays. Perlmutter has specifically stated that he was so distracted by his cocaine use during November and December of 1984 that he often spent time contemplating, during the performance of his official duties, how he was going to obtain and consume cocaine during the evening hours. *See* Transcript of August 29, 1985 Interview of Daniel Perlmutter by F.B.I. Special Agent Anthony J. Nelson, Hearing Exhibit 3504H at 2. The clear inference is that Perlmutter was simply not paying attention to his duties.

Ultimately, the explanation now proffered by the government for the delays in sealing the Venuti and Ciccio tapes is not composed of a single facet, and should not be evaluated as if it were. The government does not contend that Perlmutter failed to satisfy his obligation of timely sealing just because he was overworked, or just because he was abusing cocaine. Rather, the government contends that the explanation for Perlmutter's nonfeasance lies in the astonishing amalgam of personal difficulties that plagued him in December, 1984.[11] The government concedes that this explanation is not at all "satisfying," but insists that it may be regarded as "satisfactory" within the law of this Circuit. *See* Tr. at 543.[12]

**10.** As I have already indicated, Perlmutter was arrested in May, 1985 on charges relating to the theft of narcotics and money from the United States Attorney's Office in the Southern District. Subsequently, he engaged in a series of debriefings with the Federal Bureau of Investigation. When Perlmutter himself was subpoenaed as a witness in the pre-trial evidentiary hearing in this case, redacted sets of the handwritten notes and typed transcriptions of those debriefings were turned over to defendants pursuant to the Jencks Act, 18 U.S.C. § 3500, *et. seq.* Eventually, I ruled that Perlmutter, who had asserted his Fifth Amendment right against self-incrimination, did not have to testify in these proceedings. Nonetheless, the 3500 materials relating to Perlmutter remained part of the record and were in fact moved into evidence at several points during the pre-trial evidentiary hearing. Both defendants and this Court have relied on the comments made by Perlmutter in his debriefings as credible evidence with regard to Perlmutter's cocaine use during 1984. *See Defendants' Proposed Post-Hearing Findings of Fact and Conclusions of Law* at 20–21.

**11.** Certainly, the facts of this case bear out, to an unprecedented degree, Judge Pollack's observation that every case in this area of the law is *sui generis. United States v. Caruso*, 415 F.Supp. at 851.

**12.** Defendants have argued on several occasions that the Government should not be allowed to use Perlmutter's mental and physical incapacity as justification for the sealing delays because the Southern District United States Attorney's Office knew or should have known that Perlmutter was abusing cocaine in November and December, 1984. It is not at all clear whether such an "estoppel" theory may be fairly applied to the government's burden, under 18 U.S.C. 2518(8)(a), to provide a satisfactory explanation for sealing delays. In any event, however, I find as a matter of fact that the government did not know that Perlmutter was using illegal drugs in November and December of 1984. This finding is supported by Perlmutter's own statements to the Federal Bureau of Investigation on August 8, 1985, *see* Hearing Exhibit 3504H at 2, and by the testimony given by

### 3. The Adequacy of the Government's Explanation

■ In considering whether an explanation for sealing delays is satisfactory within the meaning of 18 U.S.C. 2518(8)(a), this Court should consider: first, the length of the delay; second, whether there was evidence of tampering; third, how much time was required to prepare the tapes for sealing; and fourth, whether defendants were prejudiced by the delays. *United States v. McGrath*, 622 F.2d 36, 42–43 (2d Cir.1980).

■ An application of the *McGrath* factors to the instant case clearly works to the advantage of the government rather than to the defendants. Here, the sealing delays of 7 and 13 days were, in the words of the Second Circuit, "not miniscule, [but] neither were they of *Gigante* proportions." *United States v. Vazquez*, 605 F.2d at 1280 (comparing delays ranging from 7 to 13 days to the delays of 8 to 12 months at issue in *Gigante*). Furthermore, there was no evidence of tampering in this case and no apparent prejudice to defendants caused by the sealing delays.[13]

In short, this case involves brief sealing delays that did not prejudice in any way the substantive rights of defendants. Quite significantly, when confronted with sealing delays of similar brevity, the Second Circuit has never chosen to suppress wiretap evidence. *See United States v. McGrath*, 622 F.2d at 43 (delays ranging form 3 to 8 days); *United States v. Vazquez*, 605 F.2d at 1279 (delays ranging from 7 to 13 days); *United States v. Scafidi*, 564 F.2d 633, 641 (2d Cir.1977) (short sealing delays). *But cf. United States v. Ricco*, 421 F.Supp. 401, 411 (S.D.N.Y.1976), *aff'd mem.*, 566 F.2d 433 (2d Cir.1977), *cert. denied*, 436 U.S. 926, 98 S.Ct. 2819, 56 L.Ed.2d 768 (1978) (sealing delays of 2 weeks not excusable under criminal procedure law of New York State).[14]

Nonetheless, the requirement that recordings of intercepted conversations be sealed and stored immediately upon the expiration of the judicial order authorizing surveillance is "an integral part" of the statutory scheme of Title III. *United States v. Gigante*, 538 F.2d at 505. The obvious danger in excusing even brief sealing delays is that such excusal may inadvertently send a signal to the government that it need not treat seriously its statutory obligation of timely sealing. I am convinced, however, that such a danger does not exist in this case. The delays in sealing the Venuti and Ciccio tapes did not occur

---

several witnesses during the pre-trial evidentiary hearing in this case. Similarly, there is no basis in the record for finding that the government should have known of Perlmutter's drug use in 1984. It is true that, with the benefit of hindsight, one might conclude that Perlmutter's poor health in December, 1984 was caused, in part, by his drug use. At the time, however, there was no reason for Perlmutter's colleagues at the United States Attorney's Office to have made that connection.

**13.** In fairness to defendants, there was only a minimal showing in this case that the sealing delays were caused by administrative difficulties. Proof by the government of such difficulties (*e.g.*, the need to inventory original tapes and ensure the availability of duplicates) has, in some cases, satisfied Title III's "satisfactory explanation" requirement and obviated the need for further inquiry. *See United States v. Massino*, 605 F.Supp. 1565, 1578 (S.D.N.Y.1985). In the instant case, however, the government conceded that duplicate original tapes were prepared at the time of monitoring, thus greatly reducing the time required to prepare the tapes for sealing. *See* Tr. at 525.

I should add, however, that the to 2 or 3 day delay in sealing the Ciccio tapes caused by the transfer of the *Venuti* investigation from Perlmutter to Fardella appears to fall clearly within the administrative "mishap" category. *See United States v. Caruso*, 415 F.Supp. 847, 850–851 (S.D.N.Y.1976), *aff'd mem.*, 553 F.2d 94 (2d Cir. 1977) (re-assignment of case to another assistant district attorney part of government's "sufficient and satisfactory explanation" for 42-day sealing delay).

**14.** A recent decision by the New York Court of Appeals suggests that the immediate sealing requirement of New York State's Criminal Procedure Law, N.Y.C.P.L. 700.50(2), unlike its federal counterpart, may be violated even by a two-day delay. *See People v. Gallina*, 66 N.Y.2d 52, 485 N.E.2d 216, 495 N.Y.S.2d 9 (October 15, 1985). In contrast, the Second Circuit has indicated that such a delay might even constitute "immediate" sealing within the meaning of 18 U.S.C. 2518(8)(a). *See United States v. Vazquez*, 605 F.2d at 1278.

because the Narcotics Unit failed to regard the sealing requirements of Title III to be of paramount importance.[15] Rather, it is my finding that the delays occurred because of the inability of a sick and severely troubled prosecutor to recognize his obligations under federal law.

This last finding is significant for two reasons. First, it casts doubt on whether the absence of a "tickler" system in the United States Attorney's Office (stressed by defendants throughout these proceedings) may truly be regarded as a proximate cause of the sealing delays in this matter. It is hard to imagine that Perlmutter would have been more likely to seal the Venuti and Ciccio tapes promptly had a print-out appeared on his desk reminding him of his obligation. Indeed, the record is clear that Snipes expressly reminded Perlmutter of that obligation on several occasions, to no avail.[16]

Second, once the sealing delays in this case have been properly characterized as the direct result of Perlmutter's individual

crisis, a serious question is raised as to whether the suppression of the Venuti and Ciccio tapes can serve any useful purpose. In particular, the unique facts of this case suggest that suppressing the tapes will have no deterrent effect on future government misconduct. This is an important consideration, given the observation of the Supreme Court, made in the context of the Fourth Amendment, that the use of an exclusionary rule that does not result in appreciable deterrence is unwarranted. *See United States v. Leon,* —— U.S. ——, 104 S.Ct. 3405, 3414, 82 L.Ed.2d 677 (1984) (citing *United States v. Janis,* 428 U.S. 433, 454, 96 S.Ct. 3021, 3032, 49 L.Ed.2d 1046 (1976)); *see also United States v. Calandra,* 414 U.S. 338, 348, 94 S.Ct. 613, 620, 38 L.Ed.2d 561 (1974) (application of the exclusionary rule is properly "restricted to those areas where its remedial objectives are thought most efficaciously served").[17]

Although I am convinced that analyzing the utility of excluding probative evidence

---

**15.** By defendants' own concession, there has been only one instance, from 1981 to the present, in which a Narcotics Unit prosecutor from the Southern District of New York, other than Perlmutter, failed to arrange for the timely judicial sealing of the fruits of electronic surveillance. *Defendants' Proposed Post-Hearing Findings of Fact and Conclusions of Law* at 27. Apparently, the Southern District United States Attorney's Office has taken heed of the Second Circuit's admonition that "[a]s the federal and state case law in this area grows, the failure to foresee and where possible, prevent sealing delays becomes less justifiable, as law enforcement officials must be expected to learn from their own experiences and those of others." *United States v. Vazquez,* 605 F.2d at 1280.

**16.** Arguably, a direct inquiry from Narcotics Unit Chief Brecher might have been even more effective than Snipes' reminders. Indeed, Perlmutter's mistakes have prompted Brecher, in her efforts to bring her Unit into absolute compliance with Title III, to make such direct inquiries of the attorneys under her supervision concerning tapes in their possession that require sealing. Brecher's new practice, however, only demonstrates that the government learns from experience in striving to satisfy the immediate sealing requirement of § 2518(8)(a) with increasing precision, a progression that has been anticipated by the Second Circuit. *See Vazquez,* 605 F.2d at 1280. But the government should not be condemned for acquiring wisdom, as it

would be were this Court to suppress the tapes on the dubious premise that they would have been timely sealed but for the lack of a personal intervention by Perlmutter's supervisor. In this area of the law, "the government's lack of foresight ... does not justify the exclusion of probative evidence lawfully obtained." *Id.* at 1279.

**17.** The Title III jurisprudence of the Second Circuit suggests that the exclusionary rule of 18 U.S.C. § 2518(8)(a) serves not only to deter government misconduct, but also to ensure the integrity of the fruits of oral and electronic surveillance. *See United States v. Gigante,* 538 F.2d at 505 (noting the inherent difficulty in detecting official tampering with wiretap evidence). Thus, in deciding whether the exclusion of probative evidence is warranted herein, this Court should consider whether the circumstances of this matter suggest even a barely credible inference of surreptitious tampering.

No such inference can be drawn from the record in this case. While the government was conducting the Venuti and Ciccio taps, the original tapes were heat-sealed in plastic envelopes and placed in a DEA vault on a daily basis. *See* Tr. at 525. When the judicial orders authorizing the taps expired, Case Agent Snipes brought the tapes to the Southern District United States Attorney's Office and left them in Perlmutter's office (the Venuti tapes were brought to Perlmutter's office on December 3, 1985; the Ciccio tapes were brought to Perlmutter's office on

is an entirely proper approach, *see United States v. Leon*, 104 S.Ct. at 3413, my decision with regard to defendants' motion to suppress is not based on such an analysis. Rather, guided by the law of this Circuit, as most recently set forth in *United States v. McGrath, supra,* my sole concern is whether the government's explanation for the sealing delays in this case is "satisfactory" within the meaning of 18 U.S.C. § 2518(8)(a). My conclusion, after reviewing the unique and unprecedented facts of this case, is that the government has satisfied its statutory burden of explanation. This determination is influenced by the marked brevity of the delays, as well as the absence of indicia of government misconduct or of prejudice to the defendants. *See United States v. McGrath,* 622 F.2d at 42–43. Accordingly, I find that the government has offered a satisfactory explanation for the sealing delays in this case, and I will not suppress the Venuti or Ciccio tapes as evidence at trial.

SO ORDERED.

December 10, 1985). *See* Tr. at 207, 212. Thus, for most of the period during which the tapes should have been judicially sealed, but were not, the tapes were in the custody of a sick, overworked and lamentably inattentive prosecutor. *See* Tr. at 232 (tapes remained in Perlmutter's office). Such evidence does not even remotely suggest the possibility of official tampering.

Thus, a sound argument can be made that the application of the exclusionary sanction in the instant case is not appropriate, since it would neither deter government misconduct, nor prevent the possible introduction of tainted evidence. Indeed, under such circumstances, the exclusion of wiretap evidence only serves to "impede unacceptably the truth-finding functions of judge and jury." *United States v. Payner,* 447 U.S. 727, 734, 100 S.Ct. 2439, 2445, 65 L.Ed.2d 468 (1980).