**UNITED STATES of America,
Appellant,**

v.

**Joseph MASSINO, a/k/a "Joey",
Salvatore Vitale, a/k/a "Sally",
Defendants-Appellees.**

**No. 85–1140.**

United States Court of Appeals,
Second Circuit.

Argued Aug. 16, 1985.

Decided Feb. 21, 1986.

Warren N. Eggleston, Asst. U.S. Atty., S.D. of N.Y. (Rudolph W. Giuliani, U.S. Atty. for the S.D. of N.Y., Benito Romano, Asst. U.S. Atty., of counsel), for appellant.

John L. Pollok, New York City (Hoffman Pollok & Gasthalter, New York City), for defendant-appellee Massino.

Mark M. Baker, Jill G. Okun, Barry Ivan Slotnick, P.C., New York City, for defendant-appellee Vitale.

Before JON O. NEWMAN and WINTER, Circuit Judges, and HOLDEN, District Judge.*

WINTER, Circuit Judge:

The government appeals from an order suppressing tapes made between June 7 and July 7, 1982, pursuant to a court-authorized wiretap. Defendants Joseph Massino and Salvatore Vitale had moved in the district court to suppress the fruits of this wiretap, as well as five previous wiretap orders. One ground asserted for suppression was that the tapes from five of the six orders had not been sealed in accordance with the law due to excessive sealing delays following termination of the respective orders. The district court, 605 F.Supp. 1565 (1985), rejected this claim as to four of the orders, but held that a fifteen-day delay in sealing the tapes from the June-July order ("the sixth order") required suppression of those tapes. The district court held

---

* Honorable James S. Holden, Senior District Judge, United States District Court for the Dis-   trict of Vermont, sitting by designation.

that the government's explanation for this delay was insufficient as a matter of law. We disagree. We believe the government's explanation for the delay is satisfactory, and reverse the order of suppression. However, we establish a new procedure for dealing with similar delays in the future.

## BACKGROUND

Defendants Massino and Vitale are charged with participating in a RICO conspiracy, 18 U.S.C. § 1962(d) (1982), and in a racketeering enterprise through the commission of assorted criminal acts. 18 U.S.C. § 1962(c). They were indicted on October 4, 1984. Shortly thereafter, the government notified Massino and Vitale of its intention to use at trial material garnered pursuant to six electronic surveillance orders approved by district judges in the Eastern District of New York. Both defendants moved to suppress the tapes, claiming: (1) that the wiretap applications did not provide probable cause and did not show adequate consideration of alternative investigative techniques, (2) that the government had not complied with certain restrictions on surveillance imposed by the authorizing judge in connection with some of the orders, and (3) that the government had failed to seal the tapes recorded under orders two through six in timely fashion as required by 18 U.S.C. § 2518(8)(a).

The tapes at issue were made between November 9, 1981, and July 7, 1982. The dates on which each order was begun, ended, and sealed are set out in the margin.[1]

The investigation pursuant to which the wiretaps were made focused on a different criminal group from that in which Massino and Vitale are alleged to have participated. Neither defendant was thus named as an interceptee in any of the six orders. However, each was recorded in conversations with targets of the wiretaps. One conversation took place between Vitale and one Angelo Ruggiero (a named target of the investigation) on June 13, 1982, during the sixth surveillance order, and the government planned to introduce it as evidence of several predicate criminal acts the two defendants had allegedly committed.

In opposition to defendants' motion to suppress, the government submitted the affidavit of Special Agent Donald McCormick, who had been responsible for the six surveillance orders. Part of the affidavit set forth explanations for the delays in sealing tapes following conclusion of several of the other orders. The delay following the conclusion of the third order was said to have resulted from "normal, administrative procedures" required before the original tapes could be deposited with the court, such as review of duplicate tapes for proper reproduction and sound quality.

The fifteen-day sealing delay following termination of the sixth order, on the other hand, was said to have been caused by an investigation into a leak in the electronic surveillance project. Because this portion of the affidavit is so important to the case, it is set out in full in the margin.[2] Accord-

---

**1.** Order

| No. | Begun | Ended | Sealed |
| --- | --- | --- | --- |
| 1 | 11/9/81 | 12/1/81 | 12/2/81 |
| 2 | 12/29/81 | 1/28/82 | 3/11/82 |
| 3 | 2/4/82 | 3/6/82 | 3/11/82 |
| 4 | 4/5/82 | 5/5/82 | 5/19/82 |
| 5 | 5/7/82 | 6/6/82 | 6/18/82 |
| 6 | 6/7/82 | 7/7/82 | 7/22/82 |

**2.** Paragraph 6 of Agent McCormick's affidavit explained the sealing delay at issue as follows:

6. The sealing delay of fifteen (15) days following the conclusion of the electronic surveillance resulted primarily from the necessity of conducting an immediate, sensitive and comprehensive investigation into a "leak" of information concerning the Title III micro-

phone investigation of Ruggiero and his associates. On July 6, 1982, the FBI learned that Angelo Ruggiero had received confidential information contained within the supporting affidavit of our Title III electronic surveillance inside his residence. Immediately, the FBI began an extensive obstruction of justice investigation utilizing all available manpower to determine the source or "leak" of this confidential information. Our major concern was not only with the potential harm to our wiretap and eavesdropping investigation, but with the possible compromising of other sensitive investigations by this unknown and unidentified source. Concurrent with our "leak" investigation, we were responsible for our attendant duties of planning and executing a search warrant for Ruggiero's residence [sic],

ing to McCormick, Angelo Ruggiero, the principal target of the wiretapping and bugging, had received information about the police investigation into his activities and those of his associates. Upon discovering the security breach, "the FBI began an extensive obstruction of justice investigation utilizing all available manpower to determine the source or 'leak' of this confidential information." The result was that the government, fearful that the Ruggiero investigation and other ongoing sensitive inquiries might be irreparably harmed by the unknown leak, and that confidential informants might be exposed and endangered, devoted its manpower to finding the leak. As a result, the tapes from the sixth order were not sealed until July 22, fifteen days after the order had expired.

The district court ruled against defendants on most of their arguments—probable cause, failure to exhaust other investigative techniques, and failure to minimize surveillance. On the sealing issue, the court held that some orders were exten-

sions of earlier orders and that the sealing requirement was triggered on only two occasions. It concluded that the relevant delays were the five-day delay following termination of the third order on March 6, 1982, and the fifteen-day delay following termination of the sixth order. The court held that the administrative justification set forth in Agent McCormick's affidavit for the first delay constituted a "satisfactory explanation," as required by *United States v. Gigante*, 538 F.2d 502, 506 (2d Cir.1976), and thus denied the motion to suppress as to those tapes. That holding is not reviewable on this appeal.[3] With respect to the fifteen-day delay, however, the court held that the government's investigation of the apparent leak was an insufficient justification as a matter of law. The court interpreted our prior caselaw as recognizing only administrative or mechanical problems in the sealing process as legitimate explanations, and held that a conscious decision by the government to com-

closing down and securing the monitoring plant and facilities, and completing our required administrative responsibilities in preparation for sealing (see paragraph 10 [sic—should be 5] *supra* ). The following is a review of our efforts to uncover the "leak" during the period prior to the sealing of the tapes on July 22, 1982: (a) a concerted effort by members of our Gambino organized crime squad to contact confidential sources in an effort to learn additional information regarding the "leak"; (b) we conducted a thorough review of voluminous toll records and pen register data from instruments utilized by Ruggiero and his associates; (c) examined available information to identify suitable subjects for continued electronic surveillance; (d) made a complete and comprehensive account of all related eavesdropping documents, including copies and originals of court orders, applications, supporting affidavits, and ancillary records (i.e., periodic reports), both sealed and otherwise, within the possession of the FBI, United States Attorney Offices, and the District Court; (e) identified all individuals who had access to the above documents within said offices; (f) submitted all accumulated records referred to in paragraph (d) above, to the FBI Latent Fingerprint Sections for analysis, (h) [sic] conducted an exhaustive review of the intercepted taped conversations and monitoring logs prepared during the wiretap investigation in order to possible [sic] identify the defendants' contact in law en-

forcement or governmental agencies; (i) maintained periodic surveillances of the defendants and their associates in order to hopefully identify the "leak" or possible contact; and (j) held a series of lengthy conferences within the FBI, in conjunction with the United States Attorneys Office and Department of Justice Organized Crime Strike Force, to assess the damage the "leak" caused, and potentially could cause, to present and future investigations, as well as ascertaining the direction of FBI law enforcement efforts.

Affidavit of Agent Donald McCormick, paragraph 6.

3. This interlocutory appeal is allowed by 18 U.S.C. § 2518(10)(b), which permits the United States to appeal immediately from an order of suppression so long as the appeal is not taken for purposes of delay. The only issue now before us is the suppression of the fruits of the sixth order, as defendants may not now cross-appeal the denial of their motions with respect to the other tapes. *See United States v. Margiotta*, 646 F.2d 729, 734 (2d Cir.1981). Defendants, as appellees in the present case, are entitled to rely on any available ground in the record to defend the judgment in their favor below, e.g., lack of probable cause, or failure to minimize. *Id.* However, they have not challenged the district court's holdings on these issues with respect to the sixth order, so we do not address them.

mit resources elsewhere was not a permissible excuse for the failure to seal tapes immediately. The sixth order was the only one affected by the delay, and the fruits of that order were suppressed.

The government now appeals.

## DISCUSSION

The relevant statute, 18 U.S.C. § 2518(8)(a), requires that the fruits of an electronic surveillance order be turned over to the issuing judge for sealing "[i]mmediately upon the expiration of the period of the order." [4] The presence of a seal, or a satisfactory explanation for its absence, is a prerequisite to the admission into evidence of such tapes. *Id.* Our prior cases have established that when the sealing is not done immediately, the government must provide a satisfactory explanation for the delay, even if a seal is present at the time the tape is sought to be introduced. *United States v. Vazquez,* 605 F.2d 1269, 1274 (2d Cir.), *cert. denied,* 444 U.S. 981, 100 S.Ct. 674, 62 L.Ed.2d 649 (1979); *United States v. Gigante,* 538 F.2d 502, 506 (2d Cir.1976). Any delay beyond two days triggers the satisfactory explanation requirement. *Vazquez,* 605 F.2d at 1278.

One purpose of the sealing requirement is to safeguard against manipulation or alteration. *Gigante,* 538 F.2d at 505. As we have observed in the past, "Portions of a conversation may be deleted, substituted, or rearranged. Yet, if the editing is skillful, such modifications can rarely, if ever, be detected." *Id.* For this reason, we have held that suppression of tapes improperly sealed is an appropriate remedy even absent a showing of actual tampering. *Id.*

We note, however, that as a safeguard against tampering, Section 2518(8)(a) is incomplete at best. Most wiretap orders last thirty days absent an extension, 18 U.S.C. § 2518(5), but the sealing obligation arises only at the end of that period. Thus, even where there is strict compliance with the statute, tapes may remain in the government's possession for long periods of time without the protection that sealing affords. For instance, the sixth surveillance order at issue here produced 110 reels of tape over a one-month period. This fact has in the past led us to observe that "tampering with the tapes could only be guarded against if they were sealed by a judge at the end of each day." *United States v. Fury,* 554 F.2d 522, 533 (2d Cir.), *cert. denied,* 433 U.S. 910, 97 S.Ct. 2978, 53 L.Ed.2d 1095 (1977). Congress did not adopt such a requirement, however, and our application of Section 2518(8)(a) does not depend on whether we believe different statutory requirements would have been more logical.

Turning to the merits, the government argues that the district court erred in rejecting as a matter of law the explanation offered for the delay in sealing the tapes from the sixth order. The court interpreted our cases "as accepting as legitimate only those delays that are a result of the administrative process of preparation of the tapes for sealing." The court concluded that "[m]ere disregard of the statute [Section 2518(8)(a)] while pursuing other investigative efforts is not sufficient," and stated that "justifications unrelated to

**4.** Section 2518(8)(a) provides in full:

The contents of any wire or oral communication intercepted by any means authorized by this chapter shall, if possible, be recorded on tape or wire or other comparable device. The recording of the contents of any wire or oral communication under this subsection shall be done in such way as will protect the recording from editing or other alterations. Immediately upon the expiration of the period of the order, or extensions thereof, such recordings shall be made available to the judge issuing such order and sealed under his directions. Custody of the recordings shall be wherever the judge orders. They shall not be destroyed except upon an order of the issuing or denying judge and in any event shall be kept for ten years. Duplicate recordings may be made for use or disclosure pursuant to the provisions of subsections (1) and (2) of section 2517 of this chapter for investigations. The presence of the seal provided for by this subsection, or a satisfactory explanation for the absence thereof, shall be a prerequisite for the use or disclosure of the contents of any wire or oral communication or evidence derived therefrom under subsection (3) of section 2517.

18 U.S.C. § 2518(8)(a) (1982).

problems inherent in the sealing of the tapes" could not excuse delays in sealing. The district court acknowledged that the FBI was legitimately concerned with the possibility of a leak in its investigation, but concluded that suppression was required since the sealing delay had not been the result of an administrative or mechanical difficulty but of a conscious choice to allocate manpower toward a different goal.

We disagree with the legal rule as adopted by the district court. That rule seeks to draw a line between acceptable "administrative" delays and unacceptable "manpower" or "allocation of resource" delays. Such a rule is both difficult to apply and overly harsh. Virtually all delays that result from the administrative process of sealing can be characterized as manpower problems or decisions to allocate resources elsewhere. "Administrative" sealing delays are neither more inevitable nor more justifiable than "manpower" or "allocation" delays—because they too could be eliminated by a decision to devote more resources of the government to the task.

Judicial concern over a decision to divert resources from the sealing process is fully justified. However, the appropriateness of such a diversion depends upon the reasons given for it. Section 2518(8)(a) imposes an affirmative duty on the prosecutor and the government, and the failure to institute efficient procedures and to provide adequate personnel, cannot excuse a failure to comply with that duty. *Vazquez*, 605 F.2d at 1280. However, it is overly harsh to suppress highly probative evidence automatically because the proffered excuse involves a decision to divert resources from the sealing of tapes, without any weighing of the underlying need for that decision.

Our prior decisions have looked to a variety of factors in determining whether an explanation given for a sealing delay is satisfactory under the statute. In *United States v. Vazquez*, 605 F.2d 1269 (2d Cir. 1979), we held that a shortage of qualified personnel, including Spanish-speaking agents to translate conversations, equipment shortages and breakdowns, and the

necessity to duplicate, label and check over 200 tapes satisfactorily explained sealing delays ranging from seven to thirteen days. We noted that, although the case was close, the investigation had lasted longer than anticipated, and concluded that suppression was inappropriate where the evidence revealed no government bad faith, lack of diligence, or attempt to gain an advantage over the defendants. *Id.* at 1279. In *United States v. McGrath*, 622 F.2d 36 (2d Cir.1980), we held that delays of three to eight days were excusable based on the government's explanation that the sealing process required that the tapes be transported from Binghamton to Albany to Auburn. *Id.* at 43. We also noted that the delays were "relatively short." *Id.* at 44.

In *United States v. Scafidi*, 564 F.2d 633 (2d Cir.1977), *cert. denied*, 436 U.S. 903, 98 S.Ct. 2231, 56 L.Ed.2d 400 (1978), a delay of seven days resulted from the prosecutor's preoccupation with the upcoming trial in the case. In holding that the government had provided a satisfactory explanation, we again characterized the delay as short and stressed the lack of bad faith or intent to evade the requirements of the statute. *Id.* at 641. In *United States v. Fury*, 554 F.2d 522, 533 (2d Cir.), *cert. denied*, 433 U.S. 910, 97 S.Ct. 2978, 53 L.Ed.2d 1095 (1977), we held that a six-day delay was reasonably explained by the unavailability of the issuing judge, who was on vacation. Other relevant cases include: *United States v. Poeta*, 455 F.2d 117 (2d Cir.) (thirteen-day delay excused by confusion under New York law as to which judge could oversee sealing), *cert. denied*, 406 U.S. 948, 92 S.Ct. 2041, 32 L.Ed.2d 337 (1972); *United States v. Caruso*, 415 F.Supp. 847 (S.D.N.Y.1976) (tapes not suppressed despite 24 and 42-day delays; delays explained by efforts of police to prepare tapes for sealing, confusion caused by tip-off to targets of tap, and unexpected hospitalization of prosecutor in charge of investigation), *aff'd mem.*, 553 F.2d 94 (2d Cir.1977).

■ This case, like *Vazquez*, is a close one. Consideration of the relevant factors,

however, leads to the conclusion that the government has provided a satisfactory explanation for the sealing delay. In the defendants' favor are the length of the delay which is among the longest we have been willing to tolerate, and the fact it resulted from a deliberate decision to divert personnel. Also in defendants' favor is the fact that the administrative task of duplication—mentioned in *Vazquez* and *McGrath* as one reason for the delay—was not necessary here since simultaneous duplicate tapes were made during the course of the surveillance.

Weighing in the government's favor are the serious nature of the leak and the lack of foreseeability that a large investigation would be needed. The existence of a leak threatening to undermine a large-scale organized crime investigation and possibly to expose and endanger confidential government sources is an urgent matter. Both the district court and the defendants concede that the government was legitimately concerned with protecting its investigation; there is no suggestion that the diversion of manpower to the investigation was a facade to avoid the sealing requirement. Further, the government cannot be blamed for its failure to allocate in advance sufficient resources to investigate the leak *and* to seal the tapes, since the necessity of the former task was not foreseeable. The leak was first discovered on July 6, 1982, only one day before the sixth order expired and the Section 2518(8)(a) sealing obligation was triggered.[5] In such circumstances, we believe the need to divert personnel to the leak investigation is a satisfactory explanation for failing to seal the tapes immediately. We therefore conclude that the fruits

of the sixth order should not be suppressed.[6]

\*　　\*　　\*

■ We are not satisfied with the manner in which sealing delay cases arise, and therefore exercise our supervisory power to establish a procedure to be followed in future such cases. Under present procedures, the delay can occur without judicial oversight. The explanation is then made long after the fact—nearly three years in the present case—and reviewing courts are confronted with the all-or-nothing alternatives of accepting the proffered explanation or suppressing the evidence even when there is no claim of tampering.

In future cases, we direct the following procedure. Tapes should generally be sealed within two days of the expiration of the wiretap order. *Vazquez*, 605 F.2d at 1278. If the government does not meet this schedule but completes the sealing within five days of the expiration of the order, it shall file *in camera* with the court an explanation, with supporting affidavits, of the reasons for the delay. To conserve judicial resources, the district court need not rule whether the proffered explanation is satisfactory under applicable law.

If the delay will exceed five days, the government shall, on or before the fifth day, move *ex parte* and *in camera* before the district judge who approved the surveillance order, or other appropriate officer if that judge is unavailable, for an extension of time. A statement on the record, with appropriate supporting affidavits, should be made as to the reason for the delay and the necessity for an extension. Proceedings thereafter should be in accord with the district court's directions as to length of

---

5. The defendants argue that the leak investigation excuse was a *post hoc* justification, and that the sealing dates following termination of prior orders reveal a pattern of delay that cannot be attributed to the investigation, which affected only the sixth order. Judge Sweet found, however, that the fourth, fifth and sixth "orders" were all part of the same wiretap order, with the latter two merely being extensions. That finding is not before us at this time. *United States v. Margiotta*, 646 F.2d 729, 734 (2d Cir. 1981). The obligation to seal does not arise

until the termination of an order plus all extensions, *Vazquez*, 605 F.2d at 1276, and the sealing "delays" following the fourth and fifth orders are thus irrelevant.

6. The evidence as to the delay consists entirely of affidavits. However, defendants stated at argument that they did not desire a hearing at which live testimony subject to cross-examination would be presented, but preferred that we decide the case on the record as it stands.

time, interim custody or other appropriate matters. Where the district court either denies the government's motion for an extension and delay ensues, or the court sets a schedule that the government does not meet, the tapes should nevertheless be sealed when ready so the government may attempt to use them as evidence notwithstanding the unapproved delay.

Where the government seeks to use the tapes as evidence against a particular defendant, that defendant may as now file a motion to suppress before the district court with jurisdiction over that case. The court addressing the suppression motion may well be different from that which approved the surveillance order and ruled upon the sealing delay issue. Where the delay was between three and five days and there is no prior ruling, the district court will determine as now the satisfactoriness of the explanation. Where the delay exceeded five days and there is a prior ruling, the issue of compliance with the sealing requirements may be litigated to the same extent as any other aspect of a wiretap application that previously received only *ex parte* consideration. Review in this court of the disposition of the motion to suppress will follow its usual course.

We believe this procedure will create a record and provide judicial oversight before delays in sealing become serious. This in turn will avoid after-the-fact explanations for lapses actually caused by oversight or neglect and will eliminate the need for courts to rely long after the fact upon the memory of agents as to the reasons for delay. *Cf. United States v. Tunnessen*, 763 F.2d 74, 78–79 (2d Cir.1985) (requiring district judges to balance pertinent factors at the time an "ends of justice" continuance is granted under 18 U.S.C. § 3161(h)(8)). This procedure will create an incentive for the government to give priority to sealing, and judicial oversight at an early stage will limit justifiable delays to the shortest time necessary. A failure by the government to follow this procedure will of course undermine any claim of satisfactory explanation.

The establishment of this procedure is in no way intended to foreclose district courts from imposing more stringent requirements in orders approving surveillance. Such orders might, for example, direct sealing within two days absent an application for an extension.

Reversed.