UNITED STATES of America, Plaintiff,

v.

Arnold SQUITIERI and Alphonse Sisca, Defendants.

Crim. No. 87–198(SSB).

United States District Court,
D. New Jersey.

June 15, 1988.

**164**

John Gleeson, Asst. U.S. Atty., Brooklyn, N.Y., for plaintiff.

Robert Koppelman, New York City, for defendant Arnold Squitieri.

David Breitbart, New York City, for defendant Alphonse Sisca.

## OPINION

BROTMAN, District Judge:

## I. INTRODUCTION

Presently before the court is the motion of defendants Arnold Squitieri and Alphonse Sisca to suppress voluminous evidence obtained between November, 1981 and July, 1982 as a result of the electronic surveillance of the residence and home telephones of alleged unindicted co-conspirator, Angelo Ruggiero. In support of their motion, defendants assert that they are entitled to the suppression of all, or at least a portion, of the fruits of the government's eight-month electronic surveillance for violations of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510, *et seq.*, and the Fourth and Fifth Amendments of the United States Constitution due to: (1) the inclusion by government agents of "false and misleading statements" in their applications submitted to the issuing judges for the electronic surveillance of Ruggiero's home and telephones; (2) the government's failure to "minimize" interceptions as required by Ti-

tle III and the authorizing court orders; (3) the government's failure to timely obtain judicial sealing of the original recordings; (4) the government's failure to satisfy the "alterative investigation techniques" requirement of Title III; and (5) the submission by government agents of applications for electronic surveillance unsupported by probable cause.

There has been no dearth of litigation on the subject of the admissability of the so-called "Ruggiero surveillance tapes." In fact, the precise issues raised by defendants herein in support of their motion to suppress have been addressed, in one form or another, by several other judges in the Eastern and Southern Districts of New York. Where applicable, this court shall refer to those prior cases in the following manner: *United States v. Joseph Massino, et al.*, No. 81 Cr. 803 (S.D.N.Y.) (Sweet, J.) (hereinafter referred to as "the *Massino* case"); *United States v. Angelo Ruggiero, et al.*, 83 Cr. 412 (E.D.N.Y.) (Costantino, J.) (hereinafter referred to as "the *Ruggiero* case"); and *United States v. Aniello Dellacroce et al.*, 85 Cr. 178 (E.D.N.Y.) (Nickerson, J.) (hereinafter referred to as "the *Dellacroce* case").

For the reasons stated below, defendants' motion to suppress electronic surveillance evidence obtained from oral and wire intercepts of Ruggiero's home and telephones between November, 1981 and July, 1982 is denied.

## II. STATEMENT OF FACTS

On June 4, 1987, defendants Arnold Squitieri and Alphonse Sisca were charged in a two-count indictment with conspiracy to distribute and with the actual distribution of heroin. Subsequently, on December 18, 1987, the grand jury handed down a superceding indictment against defendants containing both the conspiracy and substantive counts, but adding to Count I the allegations that defendants "were associated with Angelo Ruggiero and other members of the Gambino Organized Crime Family" and that "[i]n the spring of 1982, there was a rule within the Gambino Family that

any member or associate of the Gambino Family caught dealing in heroin would be killed [and that] [a]s part of the conspiracy, and in order to further its objectives, the conspirators took steps to protect themselves from that rule." In its opposition to defendants' suppression motion, the government asserts that, through the introduction of the electronic surveillance evidence, it will attempt to prove that the defendants' coconspirators included, among other individuals not indicted herein, Angelo Ruggiero.

## III. DISCUSSION

### A. *"False and Misleading Statements" in Electronic Surveillance Applications*

██ Defendants contend that Special Agent Donald W. McCormick of the Federal Bureau of Investigation perjured himself on successive applications for electronic eavesdropping authority in violation of 18 U.S.C. § 2518(1)(e), which requires an agent seeking a judicial order for electronic surveillance to include in his application a "full and complete statement" of any knowledge he possesses concerning previous applications involving the same "persons, facilities or places" sought to be electronically surveilled. Specifically, defendants assert that at the time Agent McCormick submitted his eavesdropping applications for court approval he knew, but either intentionally or recklessly failed to reveal, that: (1) John Gotti was the target of both state and federal investigations; (2) Gotti maintained his headquarters at the Bergen Hunt & Fish Club, and met there daily with Angelo Ruggiero, Frank Guidici and others; (3) the Bergen Club was currently under electronic surveillance by the District Attorney's Office in Queens, New York; (4) Lieutenant Francheschini had subpoenaed Ruggiero's toll records for the purpose of tapping his home phone; (5) the FBI, through McCormick's own actions, had been accused by Queens officials of technical interference with the Bergen Club "bug"; and (6) the bugging of the Bergen Club was being done in the hopes of overhearing Gotti and Ruggiero. (*See* Defend-

ants' Brief in Support of Motion to Suppress, at 23). However, defendants allege, notwithstanding this wealth of knowledge concerning the previous electronic surveillance of the Bergen Hunt & Fish Club and its regular members, McCormick falsely stated in his original affidavit of November 9, 1981 that "[n]o other application is known to have been made to any judge for authorization to intercept wire communications involving Angelo Ruggiero, John Gotti, Eugene Gotti, and Jackie Cavallo." (*See* Affidavit of John Gleeson, Exhibit A, at 13).

The government argues that defendants cannot prevail on this theory for two reasons. First, it contends, the issue of Agent McCormick's "knowledge" at the time he submitted his affidavits in support of the electronic surveillance was the subject of a lengthy hearing in the *Massino* case, at the conclusion of which Judge Sweet denied defendants' motion to suppress. Second, the government contends, even assuming that the "prior authorization" portions of McCormick's affidavits were materially incorrect, suppression of the conversations intercepted, or their fruits, would not be an appropriate Title III remedy.

Section 2518(1)(e) of Title 18 of The United States Code requires that each application for an order authorizing electronic surveillance include:

a full and complete statement of the facts concerning all previous applications known to the individual authorizing and making the application, made to any judge for authorization to intercept, or for approval of interceptions of wire, oral, or electronic communications involving any of the same persons, facilities or places specified in the application, and the action taken by the judge on each such application.

18 U.S.C. § 2518(1)(e). Title III provides a statutory suppression remedy for certain violations of its provisions, above and beyond the judicially-created exclusionary rule. The relevant statutory suppression provision for failure to provide the court with a "full and complete statement" of "prior authorizations" is contained in

§ 2518(10)(a)(i), which mandates the suppression of the contents of any oral or wire communications if "the communication was unlawfully intercepted."

However, the Supreme Court has left no doubt that not every violation of the provisions of Title III mandates suppression of electronic surveillance evidence or its fruits. *United States v. Chavez,* 416 U.S. 562, 574–75, 94 S.Ct. 1849, 1856, 40 L.Ed.2d 380 (1974). Rather, "suppression is required only for a failure to satisfy any of those statutory requirements that directly and substantially implement the congressional intent to limit the use of intercept procedures to those situations clearly calling for the employment of this extraordinary investigative device." *United States v. Giordano,* 416 U.S. 505, 527, 94 S.Ct. 1820, 1832, 40 L.Ed.2d 341 (1974). Thus, the relevant inquiry for suppression of evidence under Title III is whether the provision, pursuant to which there was non-compliance, is one which Congress intended to play "a central, or even functional, role in guarding against unwarranted use of wiretapping or electronic surveillance." *United States v. Chavez,* 416 U.S. at 578, 94 S.Ct. at 1857.

Numerous courts have concluded that an *intentional* failure to comply with the provisions of Title III mandates the suppression of the contents of wire or oral communications, *see e.g., United States v. Harrigan,* 557 F.2d 879, 884–85 (1st Cir.1977); *United States v. Abramson,* 553 F.2d 1164, 1170–71 (8th Cir.1977); *United States v. Massino,* 657 F.Supp. 101, 107 (S.D.N.Y. 1987), and at least one court has suggested that even a *reckless failure* to comply with Title III's provisions warrants the remedy of suppression. *United States v. Sullivan,* 586 F.Supp. 1314, 1323 (D.Mass.1984).

In ruling on defendants' motion, we must first determine whether Agent McCormick failed to comply with the "prior applications" provision of § 2513(1)(e) and, if so, whether suppression of the electronic surveillance evidence and its fruits is mandated under the statute. With regard to the first issue, Judge Costantino concluded, solely on the basis of a review of Agent McCormick's affidavits in support of his wiretap applications, that he had not violated the terms of § 2518(1)(e), and denied defendants' motion without a hearing. In his memorandum opinion, Judge Costantino observed that:

> [a]lthough McCormick knew of the existence of the Queens County surveillance, this fact in and of itself does not result in this court finding a violation of 2518(1)(e) or that McCormick committed perjury. Section 2518(1)(e) requires that the application set forth a statement concerning all previous applications *known* to the individual authorizing and making the application ... involving any of the same *persons, facilities,* or *places.* Agent McCormick was not made privy to any information resulting from the Queens County interceptions. McCormick did not *know* the "persons" named on the Queens County application.

*United States v. Ruggiero,* No. 83–412 (E.D.N.Y. Sept. 24, 1986) [available on WESTLAW, 1986 WL 15557]. (*See* Government's Opposition to Defendants' Motion to Suppress, Exhibit B, at 2). Judge Nickerson also rejected defendants' contention that Agent McCormick failed to comply with 2518(1)(e) without a hearing. (*See* Affidavit of John Gleeson, dated September 25, 1987, at ¶ 4). Unlike the *Ruggiero* and *Dellacroce* courts, we cannot conclude solely on the basis of Agent McCormick's affidavits that he had no knowledge of those named as interceptees in the prior electronic surveillance conducted by the Queens County District Attorney's Office. We agree with Judge Sweet's conclusion that "McCormick's own admission that he knew of the criminal investigation surrounding the Bergen Hunt & Fish Club and the electronic surveillance there could support an inference that he had conferred with the state officials and may have learned who the named interceptees were." (*See* Government's Opposition to Defendants' Motion to Suppress, Exhibit A, at 3).

Had this very same issue not been the subject of an extensive two-day hearing before Judge Sweet on February 13 and 17, 1987, we would be inclined to conduct our

own thorough inquiry into the matter. However, we have before us the transcript testimony from that hearing of Agent McCormick and his immediate supervisor, Bruce Mouw, and having thoroughly reviewed each witness' testimony, we find no reason to diverge from the conclusions reached by Judge Sweet. We note, too, that not only has a hearing been held on the issue of whether McCormick knew the names of those interceptees who were the subject of the Queens County electronic surveillance at the time he applied for the federal wiretap orders, but also that counsel for defendant Sisca, David Breitbart, was actually present at that hearing and had an ample opportunity to cross-examine both witnesses.[1]

McCormick's testimony reveals that at the time he sought judicial authorization for the oral and wire intercepts of Ruggiero's home and telephones he was aware (1) of the prior electronic surveillance by the Queens County District Attorney's Office of the Bergen Hunt & Fish Club as early as June, 1981; (2) that several members of the Bergen Club had received "inventory notices" informing them that they had been the subject of electronic interceptions; (3) that John Gotti's headquarters were at the Bergen Club, and that Gotti, Ruggiero and Guidici were present at the club on practically "a daily basis"; and (4) that several members of the Gambino family had been arrested as a result of Queens County District Attorney's electronic surveillance. However, we agree with the conclusion reached by Judge Sweet that:

> McCormick never spoke directly to members of the Queens District Attorney's office and was never told explicitly by Mouw, who communicated directly with that office, that Ruggiero, John Gotti, and Guidici were named interceptees in the Queens District Attorney's electronic surveillance orders. Further, Mouw denied having such knowledge. McCormick never saw the Queens District Attorney's applications or the order authorizing electronic surveillance at the Ber-

gen Hunt & Fish Club. *When McCormick stated in his affidavits that no other application naming these three interceptees is "known to have been made," he meant that he had no direct knowledge that these persons were in fact named interceptees.*

*United States v. Massino,* 657 F.Supp. at 105 (emphasis added). Thus, on the basis of both McCormick's and Mouw's testimony, Judge Sweet determined that "McCormick, did not perjure himself when he swore to the affidavit [nor] did he intentionally circumvent the language of the statute or intentionally lead the United States District Judge to believe that there were no prior applications for the same persons." *Id.*

Notwithstanding his factual finding that McCormick did not literally know of the prior applications naming John and Eugene Gotti, Ruggiero and Guidici, Judge Sweet concluded that McCormick breached his duty of candor to the court in failing to apprise the court of "the obvious inference and probability that some of the named interceptees had been named in prior applications." *Id.* at 106. However, he held that, although McCormick's lack of full disclosure constituted a technical violation of § 2518(1)(e), such a failure to comply with the statute did not require suppression because the addition of the omitted information would not have led the issuing judge to conclude that the statutory preconditions to authorization—i.e., necessity and probable cause—had not been satisfied. *Id.* at 107, *citing, United States v. Donovan,* 429 U.S. 413, 436, 97 S.Ct. 658, 672, 50 L.Ed.2d 652 (1977).

Having carefully considered the hearing testimony of Agent McCormick and Bruce Mouw, we cannot conclude, as defendants would have us do, that McCormick knew the *names* of those individuals who were the subject of the Queens County electronic surveillance, nor can we conclude that McCormick's inadequate disclosure of all information he possessed at the time of his

---

1. Mr. Breitbert represented defendant Joseph Massino in the case before Judge Sweet and, apparently, raised all of the arguments for sup-

pression that he now asserts on behalf of his client.

applications would have altered the issuing judges' decisions to order the surveillance of Ruggiero's home and telephones. Therefore, defendants' motion to suppress evidence due to the government agent's alleged failure to disclose prior authorizations is denied.

### B. *Defendants' Minimization Challenge*

■ Defendants move for suppression of all oral and wire interceptions made in the home and of the telephones of Angelo Ruggiero from April 6 through July 7, 1982 on the grounds that the government failed to "minimize" its interceptions as required by 18 U.S.C. § 2518(5) and the language of the authorization orders themselves. Defendants contend that the electronic surveillance orders of April, May and June of 1982 contained special limiting provisions designed to afford the named interceptees even greater protection from invasion of privacy than that afforded by the statute itself, which states only generally that the electronic surveillance "shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this chapter." 18 U.S.C. § 2518(5). Specifically, the April 5, 1982 order signed by United States District Judge Bramwell and the two that were issued subsequent to his initial order contained the following restrictions:

1. "No device be activated and no communications be intercepted in any of the rooms unless it has been determined that at least one of the above-named subjects is present at the Ruggiero residence.

2. "Interception will be suspended immediately when it is determined through voice identification, physical surveillance, or otherwise that none of the named interceptees or any of their *confidantes*, when identified, are participants in the oral or wire conversation unless it is determined during the portion of the oral or wire conversation already overheard

that this conversation is criminal in nature.

3. "Even if one or more of the named interceptees or their confidantes, when identified, is a participant in the oral or wire conversation, monitoring will be suspended if the oral or wire conversation is not criminal in nature or otherwise related to the offense under investigation."

(*See* Defendants' Brief in Support of Motion to Suppress at 8–9).

Defendants have engaged in an exhaustive analysis of the oral and wire interceptions between April and July of 1982, reducing it to a statistical summary of minimization violations during that period.[2] For example, defendants allege that 42.6 percent of all oral interceptions and 17.3 percent of all wire interceptions from April through June were of conversations between non-named interceptees who clearly were not "confidantes" of the named interceptees. (*See* Defendants' Brief at 35, 38–9). In addition, defendants allege that 27.7 percent of all oral interceptions made during that period were of Ruggiero speaking to persons neither named as interceptees, nor qualifying as "confidantes." *Id.* at 36. In sum, defendants argue, "viewing the conduct of the monitoring agents in a light most favorable to the government, the court's orders were violated 96.91 percent of the time the taps were in place in April through July 7, 1982," (*id.* at 39), and that, therefore, in light of the government's bad faith, or at minimum, reckless conduct, the conversations on those tapes and any fruits derived therefrom should be suppressed. (*Id.*)

We need not address the merits of defendants' minimization argument since we hold as a threshold matter that they lack standing to challenge the allegedly illegal monitoring of Ruggiero's home and telephones. We acknowledge, and the government concedes, that defendants Squittieri and Sisca are "aggrieved persons" within the meaning of 18 U.S.C. § 2510(11) be-

---

**2.** In its opposition papers, the government has advised this court that defendants' lengthy minimization analysis is lifted "verbatim" from defendants' motion to suppress in the *Ruggiero* case before Judge Costantino. If such is the case, we are troubled by defendants' failure to apprise the court of that fact in its moving papers.

cause their conversations were intercepted during the electronic surveillance of Ruggiero's home and telephones. However, "this status does not give them the unlimited right to enforce minimization requirements where they do not possess independent privacy rights in the phone [or premises] tapped." *United States v. Massino*, 605 F.Supp. at 1575.

The same minimization challenges raised by Squitieri and Sisca at bar were asserted by those defendants in *Massino* and *Dellacroce* whose voices were overheard during the electronic surveillance of Ruggiero's home and telephones. In both of those cases, their motions to suppress were denied due to their lack of standing to object to a violation of Ruggiero's privacy rights, with Judge Sweet, in particular, concluding that "a minimization claim, whether based upon § 2518(5) or the order itself, may be raised only by one with a privacy interest in the place of surveillance." *Massino*, 605 F.Supp. at 1575. It is noteworthy too that in *Ruggiero*, Judge Costantino, in granting defendants' motion for a hearing on the minimization issue, remarked that "Mr. Ruggiero *alone* has standing to challenge intercepted conversations." (*See* Government's Brief in Opposition to Motion to Suppress, Exhibit F, at 48).

The holding in those three cases, that defendants whose voices were intercepted as a result of the electronic surveillance of Ruggiero's premises lacked standing to contest the government's failure to minimize, is well-supported by the case law. *See, e.g., United States v. Fury*, 554 F.2d 522, 526 (2d Cir.), *cert. denied*, 433 U.S. 910, 97 S.Ct. 2978, 53 L.Ed.2d 1095; *United States v. Poeta*, 455 F.2d 117, 122 (2d Cir.), *cert. denied*, 406 U.S. 948, 92 S.Ct. 2041, 32 L.Ed.2d 337 (1972); *United States v. Ramsey*, 503 F.2d 524, 532 (7th Cir.1974), *cert. denied*, 420 U.S. 932, 95 S.Ct. 1136, 43 L.Ed.2d 405 (1975); *United States v. Suquet*, 547 F.Supp. 1034, 1038 n. 9 (N.D.Ill. 1982).

For example, in *United States v. Fury, supra*, the Second Circuit held that a defendant whose voice was overheard pursuant to a wiretap of another individual's home telephone lacked standing to raise the issue of improper minimization during that tap because of an insufficient privacy interest in that telephone. In that case, the Nassau County District Attorney's office obtained a court order to tap the phone of Myron Schnell, who was suspected of involvement in a series of auto thefts. On the basis of conversations overheard between Schnell and defendant Thomas Fury, the District Attorney subsequently applied for, and was granted, an order to tap Fury's telephone. On appeal from his conviction of conspiracy to transport stolen motor vehicles in interstate commerce, Fury argued that the conversations intercepted in the court-ordered wiretap of his and Schnell's telephone should be suppressed due to, *inter alia*, the government's failure to properly minimize.

The Second Circuit held that Fury, as an "aggrieved person" under the statute, had standing to challenge the improper minimization of his *own* telephone, but lacked standing to challenge the government's alleged failure to minimize during the tap of Schnell's phone "because the tap on Schnell's phone and the failure to minimize the conversations intercepted is an *invasion of Schnell's privacy*, not Fury's [citation omitted]." 554 F.2d at 526. [emphasis added]. Just as Fury lacked a privacy interest in Schnell's telephone, defendants Squitieri and Sisca lacked a privacy interest in the home and telephones of Angelo Ruggiero.

Therefore, defendants' motion to suppress due to the government's improper minimization is denied.

## C. Failure To Timely Seal Electronic Surveillance Tapes

Defendants allege that the government's failure to timely seal the fruits of its various surveillances from December 29, 1981 through July 7, 1982 violated 18 U.S.C. § 2518(8)(a), which requires that the

recordings be sealed "[i]mmediately upon the expiration of the period of the order," and, that they are therefore entitled to suppression of those conversations and any evidence derived therefrom. Specifically, defendants argue that with regard to each of the five orders for electronic surveillance issued between December 29, 1981 and July 7, 1982, the government violated § 2518(8)(a)'s prohibition against the dilatory sealing of tapes and, to this date, has failed to provide a satisfactory explanation justifying those delays. The chart below reflects the five court orders during this period that were allegedly violated due to a delay in the sealing of the tapes, their starting and ending dates, the dates on which the tapes were sealed and the net period of delay:

| | PARTIES | OFFENSES | BEGUN | ENDED | SEALED | DELAY |
|---|---|---|---|---|---|---|
| Order # 2 | Angelo Ruggiero John Gotti Eugene Gotti | 18 U.S.C. 371, 892, 894, 1955(a) 1962(c) | 12/29/81 | 1/28/82 | 3/11/82 | 42 days |
| Order # 3 | Angelo Ruggiero John Gotti Eugene Gotti | 18 U.S.C. 371, 892, 894, 1955(a) 1962(c) | 2/ 4/82 | 3/ 6/82 | 3/11/82 | 5 days |
| Order # 4 | Angelo Ruggiero John Gotti Eugene Gotti John Carneglia | 18 U.S.C. 371, 892, 894, 1955(a) 1962(c), 21 U.S.C. 846, 841 | 4/ 5/82 | 5/ 5/82 | 5/19/82 | 14 days |
| Order # 5 | Angelo Ruggiero John Gotti Eugene Gotti John Carneglia John Conroy Edward Lino | 18 U.S.C. 371, 892, 894, 1510, 1955(a) 1962(c), 21 U.S.C. 846, 841, § 100.10, 105–15, 125.25 Penal Law of State of New York | 5/ 7/82 | 6/ 6/82 | 6/18/82 | 12 days |
| Order # 6 | Angelo Ruggiero John Carneglia Edward Lino Michael Coiro Joseph Guagliano Eugene Gotti | 18 U.S.C. 371, 892, 894, 1510, 1955(a) 1962(c), 21 U.S.C. 841, 846, § 100.10, 105.15, 125.25 Penal Law of State of New York | 6/ 7/82 | 7/ 7/82 | 7/22/82 | 15 days |

Defendants contend that each of the above five court orders must be construed as separate and distinct from one another and, as such, must each be sealed in compliance with § 2518(8)(a). However, the government argues that the five challenged orders should be viewed as two phases of essentially continuous surveillance—the third order being a mere extension of the second, and the fifth and sixth being mere extensions of the fourth. It further asserts that since "extensions," "renewals," or "continuations" of court orders are not subject to the "immediate" sealing requirement of § 2518(8)(a), it must justify only two delays—the five-day gap after order # 3 and the 15–day gap after order # 6.

In *Massino*, Judge Sweet rejected defendants' argument that each electronic

surveillance order must be viewed as separate and distinct from one another, and held that orders #2 and #3 should be viewed as one continuous phase of surveillance, while orders #4, #5 and #6 should be viewed as another. 605 F.Supp. at 1577.[3] Hence, in *Massino* the government was required to provide an explanation only for delays in sealing after orders #3 and #6. We concur with Judge Sweet's conclusion on this point.

■ The government alleges that the five-day gap after order #3 was due strictly to "normal administrative procedures required before the submission of the original recordings to the court." (*See* Government's Brief in Opposition to Motion to Suppress, at 20–21). Agent McCormick states in his September 20, 1984 affidavit in opposition to defendants' motion to suppress that these "administrative delays" included: a review of the duplicate tapes to ensure proper reproduction or the necessity for quality enhancement, a comparison of the duplicates with the monitoring logs, a check of the originals to ensure proper chain of custody and the arrangement of transportation of the originals to the court of the issuing judge. (*See* Government's Appendix, Exhibit H, at 127–128).

In light of the ample case law recognizing "administrative delays" as a justifiable cause for failure to seal "immediately" the original electronic recordings, *see e.g., United States v. McGrath*, 622 F.2d 36 (2d Cir.1980); *United States v. Vasquez*, 605 F.2d 1269 (2d Cir.1979), we find the explanation provided by the government for its five-day delay after order #3 satisfactory, and, therefore, deny defendants' motion to suppress the contents of those tapes or the fruits thereof. *See also United States v. Massino*, 605 F.Supp. at 1578.

■ The government contends that the 15–day sealing delay following order #6 "resulted primarily from the necessity of conducting an immediate, sensitive and comprehensive investigation into a 'leak' of information concerning the Title III microphone investigation of Ruggiero and his associates." (*See* Appendix to Government's Brief, Exhibit H, at 128). Concluding that "[m]ere disregard of the statute while pursuing other investigative efforts is not sufficient" and that "justifications unrelated to problems inherent in the sealing of the tapes" could not excuse delays in sealing, Judge Sweet found the government's explanation for the 15–day delay unsatisfactory, and suppressed the fruits of the sixth order. *Id.* at 1579.

However, on an appeal of that ruling by the government, the Second Circuit reversed, holding that Judge Sweet's distinction between "administrative" delays and unacceptable "manpower" or "collection of resource" delays was legally incorrect. *United States v. Massino*, 784 F.2d 153, 157 (2d Cir.1986). Although the court conceded that the delay was inordinately long, it stated explicitly that "the need to divert personnel to the leak investigation is a satisfactory explanation for failing to seal the tapes immediately," *id.* at 158, and that where, as here, the existence of the leak threatened to undermine an extensive investigation into organized crime and possibly endanger the lives of confidential government informants, the delay was excusable. *Id.*

We agree with the Second Circuit's ruling on this issue and, therefore, deny defendants' motion to suppress the fruits of the government's electronic surveillance pursuant to orders #4, #5 and #6.

### D. *Failure to Exhaust "Normal Investigative Procedures"*

■ Section 2518(3)(c) of Title 18 of the United States Code requires that before an issuing judge can authorize electronic surveillance, he must find that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dan-

---

**3.** In so holding, Judge Sweet rejected the government's contention that, for sealing purposes, orders #2 thru #6 should be viewed as one continuous electronic surveillance.

gerous." 18 U.S.C. § 2518(3)(c). Defendants argue that the government failed to comply with this provision in two important ways. First, the non-eavesdropping techniques utilized by the government to conduct an investigation into the alleged criminal activities of high-ranking Gambino Family members were entirely sufficient. Second, the government failed to consider two other highly viable alternatives to electronic surveillance—*i.e.*, use of undercover agents and the use of consensual recordings by government informants.

On the issue of the exhaustion of "normal investigative procedures," defendants Squitieri and Sisca have raised essentially the same arguments as those asserted by the defendants in *Massino, Ruggiero,* and *Dellacroce.* In his opinion, with which Judges Costantino and Nickerson concurred, Judge Sweet rejected both of defendants' arguments, holding that "the affidavits of McCormick satisfactorily establish that normal investigative procedures had been used to the extent reasonably likely to succeed and that such ordinary procedures were unlikely to produce additional success." *United States v. Massino,* 605 F.Supp. at 1574. We too have conducted our own independent review of the McCormick affidavits and have reached the same factual conclusions as those of Judge Sweet. In addition, we feel that Judge Sweet's opinion accurately states the current law on this issue, and, thus, we need not revisit it here.

Therefore, we deny defendants' motion to suppress due to the government's alleged failure to comply with 18 U.S.C. § 2518(3)(c).

### E. *Insufficiency of Probable Cause*

■ Defendants Squitieri and Sisca attack the issuing judges' probable cause determinations underlying the November 9, 1981 (order # 1) and December 29, 1981 (order # 2) orders, and, in addition, seek to suppress the fruits of all subsequent orders which relied on the probable cause determinations of the first two. Section 2518(3) of Title 18 to the United States Code permits an issuing judge to order electronic surveillance only after he has made three specific findings of probable cause: (1) an individual is committing, has committed, or is about to commit a particular offense enumerated in 18 U.S.C. § 2516; (2) particular communications concerning that offense will be obtained through such oral or wire interception; and (3) the facilities from which, or the place where, the wire or oral communications are to be intercepted are being used, or are about to be used, in connection with the commission of such offense. 18 U.S.C. § 2518(3)(a), (b) and (d); *see also United States v. Massino,* 605 F.Supp. at 1571–72.

Since the probable cause supporting the issuance of an order for electronic surveillance is the same as the probable cause required for the issuance of a search warrant, *United States v. Falcone,* 505 F.2d 478, 481 (3d Cir.1974), *cert. denied,* 420 U.S. 955, 95 S.Ct. 1338, 43 L.Ed.2d 432 (1975), the relevant inquiry is whether given the "totality of the circumstances" an issuing judge or magistrate could conclude that a search will uncover evidence of wrongdoing. *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). As the Supreme Court stated in *Gates:*

> The task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Id.* In *Gates,* the court reiterated the time-worn principle that a magistrate's determination of probable cause should be accorded great deference and that "[a] grudging or negative attitude by reviewing courts toward warrants [citation omitted] is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant." *Id.* at 236, 103 S.Ct. at 2331, *citing to United States v. Ventresca,* 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965).

Our review of the November 9, 1981 affidavit of Agent McCormick in support of his application for an order authorizing the interception of wire communications from Angelo Ruggiero's home telephone in Howard Beach, Queens convinces us beyond a shadow of a doubt that there existed probable cause for the issuance of the surveillance order.[4] The crux of McCormick's affidavit is comprised of the revelations of five confidential sources. Confidential sources 1 and 2 (hereinafter referred to as "CS-1", "CS-2", "CS-3", etc.) both stated that they had known Ruggiero for more than ten years, and had each been confidential informants for the FBI for more than five. (*See* McCormick Affidavit, dated November 9, 1981, ¶¶ 7–9, 12). Each had maintained personal contact with Ruggiero over an extended period of time, as a result of which they learned of his "shylocking and gambling" activities (McCormick Aff. ¶ 7, 9–10). CS-3 was one of the victims of Ruggiero's shylock loans, being forced to make repayment at a rate exceeding 100 percent annually. (McCormick Aff. ¶ 14).

CS-4, a confidential informant for the FBI for more than a year, who obtained his information about Ruggiero, Eugene and John Gotti and Frank Guidici from "employees" of the Gambino crew and through his personal association with several of the above-named interceptees, states that he has knowledge of Ruggiero's loansharking activities and bookmaking operations, and was told by a member of the Gambino family that Ruggiero serves directly under Gambino "capo" John Gotti (McCormick Aff. ¶¶ 18–20). Finally, CS-5, an FBI informant for more than six years, states that he had maintained close personal contact with Ruggiero up thru October, 1981 and that he had first-hand knowledge of Ruggiero's shylocking and gambling activities, and furthermore, had been told on at least one occasion by Ruggiero himself that "John Gotti was a heavy gambler and loser and owed the Ruggiero and Gotti gambling

operation thousands of dollars." (McCormick Aff. ¶ 21–23).

Upon this extensive record we agree with the conclusion reached by Judge Sweet in *Massino* that "there was probable cause to believe that communications relating to gambling, loansharking and extortion activities would be obtained through monitoring the telephone at Ruggiero's premises." *Id.* at 1573.

We also find the existence of probable cause in McCormick's December 29, 1981 affidavit submitted in support of his application for the electronic surveillance of Ruggiero's new residence in Cedarhurst, New York, to United States District Judge Joseph M. McLaughlin. McCormick's second affidavit contains the content of some of the conversations overheard by the FBI pursuant to Judge Bramwell's November 9, 1981 order and additional information provided by four of the five confidential informants. For example, during a November 22, 1981 conversation with an individual referred to as "Philly," Ruggiero discussed the movement of the betting line and noted that "a Brooklyn gambling operation had a half-point lower line than theirs." (*See* McCormick Affidavit, dated December 29, 1981, ¶ 9(a)). In addition, CS-3 the shylock victim, provided the FBI with further information concerning the shylocking activities of Ruggiero and Eugene and John Gotti, stating, for instance, that Eugene Gotti had implied that he would use physical force to secure the collection of a debt. (McCormick Affidavit, ¶ 12). The December 29, 1981 affidavit also contains the statement of CS-5 that he had personally observed Jackie Cavallo and John Gotti call Ruggiero at his new residence on Long Island, and had been informed by members of the "Gotti–Ruggiero crime crew" that Ruggiero was still active in shylocking and gambling matters, and was still continuing to discuss these same matters over his home telephone. (McCormick Affidavit, ¶ 14).

Although McCormick's December 29, 1981 affidavit is not as detailed or well-doc-

4. We note that we would have reached the same conclusion had we applied the court's former *Aguilar–Spinelli* test requiring that the affidavit (1) establish the credibility of the informant or the reliability of his information, and (2) provide sufficient detail of the underlying circumstances upon which the informant bases his information.

**174**

umented as his November 9, 1981 affidavit, we conclude that the former when examined "as a whole" and "in a common sense realistic fashion," *United States v. Hillard,* 701 F.2d 1052, 1062 (2d Cir.), *cert. denied,* 461 U.S. 958, 103 S.Ct. 2431, 77 L.Ed.2d 1318 (1983), also establishes probable cause. *See United States v. Massino,* 605 F.Supp. at 1573. We flatly reject defendants' contention that the allegations contained therein "appear to be [mere] generalized underworld gossip." (*See* Defendants' Brief at 96). Therefore, for the foregoing reasons, we deny defendants' motion to suppress due to the alleged insufficiency of probable cause supporting the November 9 and December 29, 1981 orders.

Having rejected each of defendants' five challenges to the admissibility of the fruits of the electronic surveillance of Ruggiero's home and telephones from November, 1981 through July, 1982, we hereby deny their motion to suppress.

An appropriate order will be entered.

### ORDER

This matter having been brought before the court on the motion of defendants Arnold Squitieri and Alphonse Sisca to suppress all, or a portion, of the electronic surveillance evidence obtained from the oral and wire interceptions of the home and telephones of Angelo Ruggiero from November 9, 1981 thru July 7, 1982 due to: (1) the inclusion by government agents of "false and misleading statements" in their affidavits in support of their electronic surveillance applications; (2) the government's failure to "minimize" interceptions as required by Title III and the authorizing court orders; (3) the government's failure to timely obtain judicial sealing of the original tape recordings; (4) the government's failure to satisfy the "alternative investigation techniques" requirement of Title III; and (5) the submission by government agents of applications for electronic surveillance unsupported by probable cause; or for a hearing on any or all of the above enumerated issues; and

The court having carefully considered the submissions of the parties; and

For the reasons stated in an opinion to follow shortly hereafter;

IT IS on this 15th day of June, 1988, hereby

ORDERED that defendants' motion to suppress all, or a portion, of the electronic surveillance evidence obtained from the oral and wire interceptions of the home and telephones of Angelo Ruggiero from November 9, 1981 thru July 7, 1982 or for a hearing on any or all of the above-enumerated issues is DENIED.

No costs.